**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Dodie Taylor,

       Plaintiff,

       Case No. _____

vs.

       **JURY TRIAL DEMANDED**

Faith Rocha, Tracy Pfeffer, Daniel
Pfeffer, Mortgage Referral Network,
Inc., Royal Crown Bancorp,

       Defendants.

---

**COMPLAINT**

---

**THE PARTIES**

1.     Plaintiff Dodie Taylor ("**Plaintiff**") is a Minnesota resident residing at 11913 70th Place North, Maple Grove, Minnesota 55369.

2.     Defendant Faith Rocha ("**Rocha**") is a Georgia resident residing at 5319 Eton Court, Cumming, Georgia 30040-1771. Rocha is a real estate mortgage broker with considerable experience in the mortgage broker industry.

3.     Defendant Mortgage Referral Network, Inc. ("**Mortgage Referral**") is a Minnesota corporation licensed to conduct business in Minnesota with a registered address of 5932 Rhode Island Avenue North, Crystal, Minnesota 55428. Mortgage Referral is a mortgage broker and provides services to distressed homeowners. Rocha was an employee/agent of Mortgage Referral during the relevant period outlined in the Complaint.

4.     Defendant Royal Crown Bancorp ("**Royal Crown**") is a California corporation not licensed to conduct business in Minnesota with a current address of 29400 Kohoutek Way,

Suite 150, Union City, California 94587. Royal Crown is a mortgage lender. Upon information and belief, Rocha was an employee/agent of Royal Crown during the relevant period outlined in the Complaint.

5. Defendants Tracy Pfeffer and Daniel Pfeffer (collectively referred to as the **"Pfeffers"**) are Nebraska residents residing at 13011 Scott Street, Omaha, Nebraska 68142-1686.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that there exists a complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## FACTUAL ALLEGATIONS

## SHAM INVESTMENT OPPORTUNITY

8. Rocha was and is an experienced mortgage broker employed by both Mortgage Referral and Royal Crown.

9. Plaintiff and Rocha had no prior business dealings with each other and only knew each other casually through the friendship between their sons.

10. In the summer of 2006, Rocha approached Plaintiff about participating in a real estate transaction involving real property located at 6555 Saunders Lake Drive South, Minnetrista, Minnesota 55364 (Lot 10, Block 2, Saunders Lake South, Hennepin County, Minnesota) (**"Subject Property"**).

11.     Rocha represented to Plaintiff that the Pfeffers, the then owners of the Subject Property, were struggling financially and were at risk of losing the Subject Property through mortgage foreclosure or other legal process. Rocha stated that the Pfeffers needed someone with good credit to assist them in refinancing the Subject Property to allow the Pfeffers to keep the Subject Property and maintain their equity in the Subject Property.

12.     Rocha represented to Plaintiff that the real estate transaction would generally work as follows: Plaintiff would apply for a mortgage loan(s) for the purchase of the Subject Property. At or about the same time of the closing for the Subject Property, Plaintiff and the Pfeffers would enter into a Contract for Deed whereby the Pfeffers would repurchase the Subject Property from Plaintiff (the entire real estate transaction will be referred to as the **"Transaction"**).

13.     It was agreed upon between the parties that Plaintiff would receive $25,000 from the Pfeffers for performing her part of the agreement, and Rocha would receive in her individual capacity approximately $17,300 from the Pfeffers for "consulting services".

**PURCHASE AGREEMENT AND LOAN DOCUMENTS**

14.     On or about July 10, 2006, Rocha, in her capacity as employee of Mortgage Referral and agent for Plaintiff, completed a Uniform Residential Loan Application. In this Application, Rocha represented that she had conducted an interview with Plaintiff face-to-face and that the Subject Property would be Plaintiff's primary residence. Attached and marked as Exhibit 1 is a true and correct copy of the Uniform Residential Loan Application.

15.     Shortly after submitting the Uniform Residential Loan Application, Plaintiff expressed to Rocha that she had some concerns about the Transaction given her inexperience in real estate transactions and her inability to pay back a loan of the magnitude necessary to acquire

the Subject Property. Rocha assured Plaintiff not to worry because Rocha "had an attorney review everything to make darn sure [the transaction was legitimate] and the title companies legal department has also reviewed it." Rocha also provided assurances to Plaintiff that the Pfeffers would wire Plaintiff all requisite funds related to the real estate transaction "within a couple hours of closing." Rocha also represented to Plaintiff that Plaintiff could afford the loan since the Pfeffers were actually going to make the monthly payments for the loan. Attached and marked as Exhibit 2 is a true and correct copy of correspondence from Rocha to Plaintiff dated July 21 and July 24, 2006.

16. On or about July 24, 2006, relying on (a) Rocha's representations that the transaction had been reviewed by two sets of lawyers and deemed safe for her; (b) Rocha's real estate expertise; and (c) the Pfeffers representations that they would acquire the Subject Property as agreed, Plaintiff entered into a Purchase Agreement for the Subject Property with the Pfeffers in the amount of $865,000.00. The scheduled closing date was August 7, 2006. Attached and marked as Exhibit 3 is a true and correct copy of the Purchase Agreement.

17. Rocha arranged for appraisals of the Subject Property prior to closing. Both appraisals estimated the market value of the Subject Property at $865,000.00, the exact same price as the purchase price reflected in the Uniform Residential Loan Application that Rocha completed. Attached and marked as Exhibits 4 and 5 are true and correct copies of appraisals of the Subject Property prepared by Stoneridge Appraisal Services and Landsafe Appraisal Services respectively. Upon information and belief, these appraisals established a market value approximately $100,000 higher than the Pfeffers were marketing the Subject Property for one year earlier.

18. On August 1, 2006, Rocha obtained financing on behalf of Plaintiff for Plaintiff's purchase of the Subject Property. Attached and marked as Exhibit 6 is a true and correct copy of correspondence from Rocha to Plaintiff dated August 1, 2006.

19. On August 7, 2006, Plaintiff emailed Rocha about concerns she had about having adequate insurance coverage for the Subject Property. In response, Rocha advised Plaintiff that the insurance Plaintiff had acquired was adequate and occupancy of the Subject Property was not necessary because Plaintiff was financing the purchase as a "second home." Attached and marked as Exhibit 7 is a true and correct copy of correspondence between Rocha and Plaintiff dated August 7, 2006.

20. On or about August 8, 2006, Plaintiff and the Pfeffers executed an Addendum to Purchase Agreement, agreeing to extend the closing date to August 10, 2006. Attached and marked as Exhibit 8 is a true and correct copy of the Addendum to Purchase Agreement.

## CONTRACT FOR DEED AND ADDENDUMS THERETO

21. At or about the same time that the parties were preparing for the first closing on the Subject Property, Rocha was also orchestrating the repurchase of the Subject Property through a Contract for Deed between the Pfeffers and Plaintiff. According to the terms of the Contract for Deed, which was drafted by Rocha, the Pfeffers were to repurchase the Subject Property from Plaintiff as follows: (1) 1st mortgage interest only monthly installments of $5,117.92 beginning October 1, 2006 made payable to Royal Crown or assigns; (2) 2nd mortgage interest only monthly installments of $1,913.73 beginning October 1, 2006 made payable to Royal Crown or assigns; and (3) $865,000 due and payable in full on or before December 30, 2006. Attached and marked as Exhibit 9 is a true and correct copy of the Contract for Deed.

22. According to the Contract for Deed, the Pfeffers were to repurchase the Subject Property from Plaintiff no later than December 30, 2006.

23. On or about August 10, 2006, the Pfeffers, at the direction of Rocha, executed and delivered to Plaintiff an Addendum to Contract for Deed ("**Addendum 1**"). The Addendum 1 provided that the Pfeffers would wire $17,300 to Rocha for "consulting services" on the same day of closing. Attached and marked as Exhibit 10 is a true and correct copy of Addendum 1.

24. On or about August 10, 2006, Plaintiff and the Pfeffers, at the direction of Rocha, executed a second Addendum to Contract for Deed ("**Addendum 2**"). The Addendum provided that on the date of closing, the Pfeffers would wire all proceeds they received from the sale of the Subject Property, in this case $163,501.92 ("**Equity Proceeds**"), less certain proceeds outlined in detail below, to an escrow account held in the name of Plaintiff at Americana Community Bank. The Pfeffers also reiterated their obligation to wire $17,300 to Rocha on the same date of closing as outlined in Addendum 1 and agreed to pay $25,000 to Plaintiff in five equal checks/payments of $5,000 for payment to finance the Transaction through Plaintiff. Attached and marked as Exhibit 11 is a true and correct copy of Addendum 2.

25. Addendum 2 also provided that the Equity Proceeds would be held in escrow by Plaintiff until the Contract for Deed was recorded and the resale of the Subject Property from the Pfeffers to a subsequent purchaser was completed.

**REAL ESTATE CLOSING**

26. On August 15, 2006, Plaintiff and the Pfeffers closed on the purchase of the Subject Property.

27. Plaintiff financed the purchase of the Subject Property from two mortgage loans in the amount of $692,000 and $173,000 provided by Royal Crown, Rocha's employer. Rocha

obtained both loans on behalf of Plaintiff. Attached and marked as Exhibits 12 and 13 are the relevant closing documents for the Subject Property, including the above-referenced mortgage loans.

28. Royal Crown received $2,233.00 in closing costs from the sale of the Subject Property.

29. Mortgage Referral received $15,360 in closing costs from the sale of the Subject Property.

30. Rocha prepared, on behalf of Plaintiff, an Occupancy and Financial Status Affidavit as part of the closing requirements. In this document, Rocha represented that Plaintiff either currently resided in the Subject Property or would be using the Subject Property as Plaintiff's primary residence.

31. Rocha also prepared, on behalf of Plaintiff and in her capacity as employee/agent for Royal Crown, a revised Uniform Residential Loan Application. In this revised Application, Rocha altered and misstated the following employment and financial information previously provided by Plaintiff in order to qualify Plaintiff for the purchase of the Subject Property: (1) stated that Plaintiff had worked for her current employer, Wooddale Builders, Inc. for nine (9) years when in fact Plaintiff had only worked for Wooddale for approximately three (3) months; (2) grossly overstated Plaintiff's gross monthly income at $18,000 per month; (3) stated that Subject Property would be Plaintiff's primary residence and that Plaintiff was currently renting true primary residence located at 11913 70th Place North, Maple Grove, Minnesota 55369; and (4) mischaracterized Plaintiff's mortgage payments on true primary residence as rental income.

32. The Pfeffers walked away from the closing with the full Equity Proceeds.

## POST-CLOSING EVENTS

33. Although the Pfeffers remitted $17,300 to Rocha shortly after closing, they failed to pay the incremental $5,000 payments as called for in the Contract for Deed, or to immediately pay the balance of the equity as called for in the Contract for Deed.

34. On or about September 1, 2006, the Pfeffers remitted $20,000 in four separate checks to Plaintiff pursuant to the Contract for Deed. Every check was subsequently returned for insufficient funds. Attached and marked as Exhibit 14 are true and correct copies of the tendered checks including a bank statement from Americana Community Bank reflecting the insufficient funds.

35. Subsequently, on or about September 19, 2006, the Pfeffers once again tendered $25,000 in five checks as required by the Contract for Deed. All but one of the checks were returned for insufficient funds.

36. Despite repeated assurances from the Pfeffers that they would remit the remaining financing services fee and Equity Proceeds, to date they have failed to do so.

37. The Pfeffers have made no efforts to market the Subject Property.

38. The Pfeffers are in default under the Contract for Deed for, among other things:

   a. Failing to make monthly payments;

   b. Failing to pay Plaintiff's closing fee; and

   c. Committing waste and abandoning the Subject Property.

## DAMAGE TO SUBJECT PROPERTY AND DELINQUENT MORTGAGE PAYMENTS

39. During the winter of 2006-07, Plaintiff learned that the water pipes had frozen in the Subject Property because the Subject Property was abandoned by the Pfeffers and the Subject Property has sustained significant water damage.

40. On or about March 19, 2007, Litton Loan Servicing, the current loan servicer for Plaintiff's mortgage loans on the Subject Property, advised Plaintiff that her loan was past due for the March 12, 2007 payment. Attached and marked as Exhibit 15 is a true and correct copy of correspondence from Litton Loan Servicing, Inc. to Plaintiff dated March 19, 2007.

41. On March 30, 2007, Plaintiff sent written correspondence to Rocha and the Pfeffers demanding that Rocha pay to Plaintiff the $17,300 unearned consulting fee to assist Plaintiff in covering the costs associated with the wrongful acts perpetrated upon her, and for the Pfeffers to cure all of their defaults under the Contract for Deed. To date, Rocha and the Defendants have failed to meet Plaintiff's written demand. Attached and marked as Exhibit 16 is a true and correct copy of correspondence from Plaintiff's counsel to Rocha and the Pfeffers dated March 30, 2007.

## COUNTS AGAINST ROCHA, MORTGAGE REFERRAL, AND ROYAL BANCORP

### COUNT I
### FRAUD IN THE INDUCEMENT

42. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

43. Prior to entering into the Transaction with the Pfeffers, and to induce Plaintiff's entry therein, Rocha, while in her capacity as employee/agent of Mortgage Referral and Royal Bancorp, represented to Plaintiff that: (1) she was representing Plaintiff in the Transaction; (2) she had knowledge of real estate and how to successfully and legally complete the Transaction; (3) she had the ability to properly document the Transaction; (4) the Transaction was legitimate and that Plaintiff had nothing to worry about in entering into the Transaction because Rocha had received confirmation from legal counsel that the Transaction was proper, and (5) that the Pfeffers would pay all amounts as agreed upon in the Contract for Deed and Addendum 2.

44.     At the time Rocha made these representations, she knew that these representations were false.

45.     Rocha made these representations in order to induce Plaintiff to enter into the Transaction.

46.     Rocha's false representations were misrepresentations of a material fact as Plaintiff would not have entered into the Transaction but for these representations.

47.     Plaintiff justifiably relied upon Rocha's above-described representations.

48.     At the time Rocha made the above-described false representations to Plaintiff, an agency relationship existed between Rocha and Mortgage Referral/Bancorp.

49.     Rocha was acting within the scope of her employment with Mortgage Referral/Bancorp when she made the above-described false representations to Plaintiff.

50.     Mortgage Referral and Bancorp ratified the Transaction and received a monetary benefit from the Transaction.

51.     Rocha's acts are directly attributable to Mortgage Referral and Bancorp.

52.     As a direct and proximate result of Rocha, Mortgage Referral, and Bancorp's fraudulent conduct as described above, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

## COUNT II
## CONSUMER FRAUD

53.     Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

54.     Rocha, while in her capacity as employee/agent of Mortgage Referral and Royal Bancorp, falsely represented to Plaintiff that the Transaction was legitimate and that Plaintiff had nothing to worry about in entering into the Transaction because Rocha had received confirmation

10

from legal counsel that the Transaction was proper, with the intent that Plaintiff rely upon said representation.

55. Rocha's false representation was made in connection with the sale of merchandise within the meaning of Minnesota's Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*

56. Rocha's conduct as described above is in violation of Minnesota's Consumer Fraud Act.

57. At the time Rocha made the above-described false representations to Plaintiff, an agency relationship existed between Rocha and Mortgage Referral/Bancorp.

58. Rocha was acting within the scope of her employment with Mortgage Referral/Bancorp when she made the above-described false representations to Plaintiff.

59. Mortgage Referral and Bancorp ratified the Transaction and received a monetary benefit from the Transaction.

60. Rocha's acts are directly attributable to Mortgage Referral and Bancorp.

61. By virtue of Rocha, Mortgage Referral, and Bancorp's violation of the Consumer Fraud Act, Plaintiff is entitled to recover damages in an amount not less than $1,000,000 to be proven at trial, together with costs and reasonable attorneys' fees.

## COUNT III
### DECEPTIVE TRADE PRACTICES

62. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

63. Prior to and at the time she entered into the Transaction, Rocha, while in her capacity as employee/agent of Mortgage Referral and Royal Bancorp, knowingly and falsely represented to Plaintiff that the Transaction was legitimate and that Plaintiff had nothing to

worry about in entering into the Transaction. Rocha also made several false representations in order to qualify Plaintiff for loans to finance the purchase of the Subject Property.

64. Rocha's conduct as described above constitutes the use of deceptive representations in connection with the sale of goods or services, in violation of Minn. Stat. § 325D.44, subd. 1(4).

65. Rocha's conduct as described above constitutes a wrongful representation that goods or services have characteristics or qualities they do not have, in violation of Minn. Stat. § 325D.44, subd. 1(5).

66. Rocha's conduct as described above constitutes a wrongful representation that goods or services are of a particular standard, quality or grade when if fact they are another, in violation of Minn. Stat. § 325D.44, subd. 1(7).

67. At the time Rocha made the above-described wrongful representations to Plaintiff, an agency relationship existed between Rocha and Mortgage Referral/Bancorp.

68. Rocha was acting within the scope of her employment with Mortgage Referral/Bancorp when she made the above-described wrongful representations to Plaintiff.

69. Mortgage Referral and Bancorp ratified the Transaction and received a monetary benefit from the Transaction.

70. Rocha's acts are directly attributable to Mortgage Referral and Bancorp.

71. By virtue of Rocha, Mortgage Referral, and Bancorp's violation of the Minnesota Deceptive Trade Practices Act as described above, Plaintiff is entitled to recover damages not less than $1,000,000 to be proven at trial, together with costs and reasonable attorneys' fees.

**COUNT IV**
**BREACH OF MORTGAGE BROKER STANDARD OF CONDUCT**
**(§58.13, MINN. STAT.)**

72. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

73. Rocha is a "mortgage broker" as defined pursuant to §58.02, subd. 13, Minn. Stat.

74. Rocha was Plaintiff's mortgage broker for the Transaction.

75. Rocha owed Plaintiff the following duties pursuant to the mortgage broker-client relationship:

   a. Duty not to make or cause to be made, directly or indirectly, any false, deceptive, or misleading statement or representation in connection with a residential loan transaction including, without limitation, a false, deceptive, or misleading statement or representation regarding the borrower's ability to qualify for any mortgage product in accordance with §58.13, subd. 9, Minn. Stat.

   b. Duty not to make or assist in making any residential mortgage loan with the intent that the loan will not be repaid and that the residential mortgage originator will obtain title to the property through foreclosure in accordance with §58.13, subd. 13, Minn. Stat.

   c. Duty to provide or offer to provide for a borrower, any brokering or lending services under an arrangement with a person other than a licensee or exempt person in accordance with §58.13, subd. 14, Minn. Stat.

76. Rocha, while in her capacity as employee/agent of Mortgage Referral and Royal Bancorp, breached her duties as a mortgage broker to Plaintiff by: (1) representing that the

13

Transaction was legitimate and risk-free; (2) misrepresenting in the Uniform Residential Loan Application Plaintiff's work history, residential status, and current income so that Plaintiff would qualify for loans to finance the purchase of the Subject Property; (3) structuring Plaintiff's loans for the purchase of the Subject Property with Rocha's employer, Royal Crown, with the intent that Plaintiff would not be able to repay the loans and that Royal Crown would ultimately obtain title to the Subject Property; and (4) structuring Plaintiff's loans for the purchase of the Subject Property with Royal Crown, a lender not licensed in the State of Minnesota.

77. At the time Rocha breached the above-described duties to Plaintiff, an agency relationship existed between Rocha and Mortgage Referral/Bancorp.

78. Rocha was acting within the scope of her employment with Mortgage Referral/Bancorp when she breached the above-described duties to Plaintiff.

79. Mortgage Referral and Bancorp ratified the Transaction and received a monetary benefit from the Transaction.

80. Rocha's acts are directly attributable to Mortgage Referral and Bancorp.

81. Rocha, Mortgage Referral, and Royal Bancorp's breach of their statutory standard of conduct directly and proximately caused Plaintiff's damages.

82. As a direct and proximate result of Rocha, Mortgage Referral, and Royal Bancorp's breach, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

## COUNT V
## <u>NEGLIGENCE</u>

83. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

84. Rocha, as Plaintiff's agent, owed Plaintiff a duty to advise Plaintiff of all the risks involved with the Transaction and to prepare the Transaction documents, including but not limited to the Contract for Deed, Addendum 1, Addendum 2, and loan application, in accordance with industry norms and standards.

85. Rocha, while in her capacity as employee/agent of Mortgage Referral and Royal Bancorp, breached her duties to Plaintiff by breached her duties to Plaintiff by representing that the Transaction was legitimate and risk-free and not preparing the Transaction documents in accordance with industry norms and standards.

86. Rocha's breach directly and proximately caused Plaintiff's damages.

87. At the time Rocha breached her duties to Plaintiff, an agency relationship existed between Rocha and Mortgage Referral/Bancorp.

88. Rocha was acting within the scope of her employment with Mortgage Referral/Bancorp when she breached her duties to Plaintiff.

89. Mortgage Referral and Bancorp ratified the Transaction and received a monetary benefit from the Transaction.

90. Rocha's acts are directly attributable to Mortgage Referral and Bancorp.

91. As a direct and proximate result of Rocha, Mortgage Referral, and Royal Bancorp's breach, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

## COUNT VI
## UNJUST ENRICHMENT

92. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

93. Plaintiff has conferred a benefit upon Rocha by serving as the financier for the Transaction.

94. As a direct result of Rocha's wrongful conduct outlined above, Rocha, Mortgage Referral, and Bancorp have been unjustly enriched at Plaintiff's expense.

95. As a direct and proximate result of the unjust enrichment, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

## COUNT VII
## CONSTRUCTIVE TRUST

96. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

97. Rocha, Mortgage Referral, and Royal Bancorp have received at least $34,193 in cash proceeds from the sale of the Subject Property.

98. Plaintiff is entitled to have a constructive trust imposed upon the cash proceeds to prevent the waste or transfer of the cash proceeds to a third party.

## COUNTS AGAINST THE PFEFFERS

## COUNT I
## BREACH OF CONTRACT

99. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

100. Under the Contract for Deed and Addendum 2, the Pfeffers agreed, among other things: to pay Plaintiff a financing service fee, to deliver the entire Equity Proceeds to Plaintiff's trust account, to make all payments under the Contract for Deed no later than December 30, 2006, and to not commit waste on the Subject Property.

101. The Pfeffers have breached the Contract for Deed and Addendum 2 by not paying Plaintiff the financing service fee, not remitting the Equity Proceeds to Plaintiff's trust account, by failing to make all payments under the Contract for Deed.

102. The Pfeffers have also breached the Contract for Deed and Addendum 2 by committing waste on the Subject Property by allowing the Subject Property to sustain significant water damage and by not procuring the necessary insurance coverage to cover any damage.

103. As a direct and proximate result of the Pfeffers' breach of the Contract for Deed and Addendum 2 as described above, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

**COUNT II**
**FRAUD IN THE INDUCEMENT**

104. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

105. Prior to entering into the Transaction with the Pfeffers, and to induce Plaintiff's entry therein, the Pfeffers represented to Plaintiff that they would pay her a $25,000 finance service fee, forward all Equity Proceeds to an escrow account held in Plaintiff's name, and repurchase the Subject Property no later than December 30, 2006..

106. At the time the Pfeffers made these representations, they had no present intention and/or they did not have the ability of fulfilling the above-described obligations to Plaintiff.

107. The Pfeffers false representations as outlined above was a misrepresentation of a material fact, as Plaintiff would not have entered into the Transaction had she known that the Pfeffers either had no present intention of fulfilling their obligations or lacked the ability to do so.

108. Plaintiff justifiably relied upon the Pfeffers' representations.

109. As a direct and proximate result of the Pfeffers' fraudulent conduct as described above, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT

110. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

111. Plaintiff has conferred a benefit upon the Pfeffers by serving as the financier for the Transaction.

112. As a direct result of the Pfeffers' wrongful conduct outlined above, the Pfeffers have been unjustly enriched at Plaintiff's expense.

113. As a direct and proximate result of the unjust enrichment, Plaintiff has been damaged in an amount not less than $1,000,000 to be proven at trial.

## COUNT IV
## CONSTRUCTIVE TRUST

114. Plaintiff restates and realleges all preceding Paragraphs of the Complaint as though set forth herein at length.

115. The Pfeffers have received at least $163,501.92 in cash proceeds from the sale of the Subject Property, and have retained the majority of these proceeds.

116. Plaintiff is entitled to have a constructive trust imposed upon the cash proceeds to prevent the waste or transfer of the cash proceeds to a third party.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

1. For compensatory damages in an amount in excess of $1,000,000 to be proven at trial.

2. For a constructive trust on the $34,193 consulting/closing costs fees and any remaining Equity Proceeds.

3. For an award of attorneys fees, costs and expenses of this action.

4. For an award of any and all statutory damages available under applicable law.

5. For such other and further relief as the Court may deem to be just, fair and equitable under the circumstances of this case.

**LEONARD, O'BRIEN,**
**SPENCER, GALE & SAYRE, LTD.**

Dated: April 20, 2007          By: _____
Ernest F. Peake, #212453
Chad A. Kelsch, #0300974
Attorneys for Plaintiff
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
(612) 332-1030

## ACKNOWLEDGMENT

The Plaintiff, by her attorneys, acknowledges that sanctions may be imposed under Minn. Stat. § 549.211

**LEONARD, O'BRIEN,**
**SPENCER, GALE & SAYRE, LTD.**

Dated: April 20, 2007          By: _____
Ernest F. Peake, #212453
Chad A. Kelsch, #0300974
Attorneys for Plaintiff
100 South Fifth Street, Suite 2500
Minneapolis, Minnesota 55402
(612) 332-1030

359542