**PURCHASE AGREEMENT**
This form approved by the Minnesota Association of
REALTORS®, which disclaims any liability
arising out of use or misuse of this form.
© 2005 Minnesota Association of REALTORS®, Edina, MN

1. Date __7-24-06__
2. Page 1 of __7 including Addendums__

3. RECEIVED OF __Dodie Taylor__
4. _____
5. the sum of __One__ _____ Dollars ($ __1.00__ )
6. by ☐ CHECK ☐ CASH ☐ NOTE as earnest money to be deposited upon acceptance of Purchase Agreement by all parties, on or
7. before the third business day after acceptance, in the trust account of listing broker, unless otherwise agreed to in writing, but to be
8. returned to Buyer if Purchase Agreement is not accepted by Seller. Said earnest money is part payment for the purchase of the property located at
9. Street Address: __6555 Saunders Lake Drive South__ , State of Minnesota,
10. City of __Minnetrista__ , County of __Hennepin__
11. legally described as __Lot 10 Block 2, Saunders Lake South, Hennepin__
12. __County, Minnesota__
13. including all fixtures on the following property, if any, owned by Seller and used and located on said property, including but not limited to garden bulbs,
14. plants, shrubs and trees; storm sash, storm doors, screens and awnings; window shades, blinds, traverse and curtain and drapery rods; attached
15. lighting fixtures and bulbs; plumbing fixtures, water heater, heating plants (with any burners, tanks, stokers and other equipment used in
16. connection therewith), built-in air-conditioning equipment, electronic air filter, water softener ☐ OWNED ☐ RENTED ☐ NONE, built-in humidifier
17. and dehumidifier, liquid gas tank and controls (if the property of Seller), sump pump; attached television antenna, cable TV jacks and
18. wiring; BUILT-INS: dishwashers, garbage disposals, trash compactors, ovens, cook-top stoves, microwave ovens, hood fans, intercoms;
19. ATTACHED: carpeting; mirrors; garage door openers and all controls; smoke detectors; fireplace screens, doors and heatilators; AND the following
20. personal property: __Stove, refrigerator__
21. _____
22. _____
23. all of which property Seller has this day agreed to sell to Buyer for sum of ($ __865,000.00__ )
24. __Eight Hundred Sixty Five Thousand__ _____ Dollars,

25. which Buyer agrees to pay in the following manner:
26. 1.  Cash of at least __85__ percent (%) of the sale price, which includes the earnest money; PLUS
27. 2.  Financing, the total amount secured against this property to fund this purchase, not to exceed __100__ percent (%) of the sale price.
28. Such financing will be (Check one.) ☐ a first mortgage; ☐ a contract for deed; or ☐ a first mortgage with subordinate financing, as described
29. in the attached Addendum: ☐ Conventional ☐ FHA ☐ DVA ☐ Assumption ☐ Contract for Deed ☒ Other: __Seller to carry 2nd mortgage note__
30. The date of closing shall be __on or before Aug 7__, 20__06__.
31. This Purchase Agreement ☐ IS ☒ IS NOT subject to a Contingency Addendum for sale of Buyer's property. (If answer is IS, see attached Addendum.)
32. (If answer is IS NOT, the closing of Buyer's property, if any, may still affect Buyer's ability to obtain financing, if financing is applicable.)
33. This Purchase Agreement ☐ IS ☒ IS NOT subject to cancellation of a previously written Purchase Agreement dated _____
34. (If answer is IS, said cancellation shall be obtained no later than _____, 20____. If said cancellation is not obtained
35. by said date, this Purchase Agreement is canceled. Buyer and Seller shall immediately sign a Cancellation of Purchase Agreement
36. confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer.)
37. Buyer has been made aware of the availability of property inspections. Buyer ☐ Elects ☒ Declines to have a property inspection performed at Buyer's
38. expense.
39. This Purchase Agreement ☐ IS ☒ IS NOT subject to an Inspection Addendum. (If answer is IS, see attached Addendum.)
40. DEED/MARKETABLE TITLE: Upon performance by Buyer, Seller shall deliver a ☐ Warranty Deed or ☐ Other: _____ Deed
41. joined in by spouse, if any, conveying marketable title, subject to:
42. (A) building and zoning laws, ordinances, and state and federal regulations; (B) restrictions relating to use or improvement of the
43. property without effective forfeiture provisions; (C) reservation of any mineral rights by the State of Minnesota; (D) utility and
44. drainage easements which do not interfere with existing improvements; (E) rights of tenants as follows (unless specified, not
45. subject to tenancies):
46. and (F) others (must be specified in writing): _____
47. ☐ BUYER SHALL PAY ☒ SELLER SHALL PAY on date of closing any deferred real estate taxes (e.g., Green Acres) or special
48. assessments, payment of which is required as a result of the closing of this sale.
49. ☐ BUYER AND SELLER SHALL PRORATE AS OF THE DATE OF CLOSING ☒ SELLER SHALL PAY ON DATE OF CLOSING all installments
50. of special assessments certified for payment, with the real estate taxes due and payable in the year of closing.
51. ☐ BUYER SHALL ASSUME ☒ SELLER SHALL PAY on date of closing all other special assessments levied as of the date of this Agreement.
52. ☐ BUYER SHALL ASSUME ☒ SELLER SHALL PROVIDE FOR PAYMENT OF special assessments pending as of the date of this Agreement
53. for improvements that have been ordered by any assessing authorities. (Seller's provision for payment shall be by
54. payment into escrow of two (2) times the estimated amount of the assessments or less, as required by Buyer's lender.)
55. Buyer shall pay any unpaid special assessments payable in the year following closing and thereafter, the payment of which is not otherwise
56. herein provided.
57. As of the date of this Purchase Agreement, Seller represents that Seller ☐ HAS ☒ HAS NOT received a notice regarding any new improvement
58. project from any assessing authorities, the costs of which project may be assessed against the property. Any such notice
59. received by Seller after the date of this Purchase Agreement and before closing shall be provided to Buyer immediately. If such notice
60. is issued after the date of this Purchase Agreement and on or before the date of closing, then the parties may agree in writing, on or before the
61. date of closing, to pay, provide for the payment of or assume the special assessments. In the absence of such agreement, either party may
62. declare this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this
63. Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a Cancellation
64. of Purchase Agreement confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer.

MN:PA-1 (8/05)

EXHIBIT
tabbies®
3

TITLE AND EXAMINATION: Within a reasonable time period after acceptance of this Purchase Agreement, Seller, at Seller's option, shall provide one of the following title evidence options, which shall include proper searches covering bankruptcies, state and federal judgments and liens, and levied and pending special assessments to Buyer or Buyer's designated title service provider:

(1) A commitment for an owner's policy of title insurance on a current ALTA form issued by an insurer licensed to write title insurance in Minnesota as selected by Buyer, Seller shall be responsible for the title search and exam costs related to the commitment. Buyer shall be responsible for all additional costs related to the issuance of the title insurance policy(ies) including but not limited to the premium(s). Buyer's name search and plat drawing, if any. Seller shall surrender a copy of any owner's title insurance policy and Abstract of Title, if in Seller's possession or control, for this Property to Buyer or Buyer's designated title service provider.

(2) An Abstract of Title certified to date if Abstract Property or a Registered Property Abstract (RPA) certified to date if Registered (Torrens) Property. Seller shall pay for the abstracting or RPA costs and surrender any abstract for this Property in Seller's possession or control to Buyer or Buyer's designated title service provider. If Property is Abstract and Seller does not have an Abstract of Title, Option (1) will automatically apply.

Seller shall use Seller's best efforts to provide marketable title by the date of closing. In the event Seller has not provided marketable title by the date of closing, Seller shall have an additional 30 days to make title marketable, or in the alternative, Buyer may waive title defects by written notice to Seller. In addition to the 30-day extension, Buyer and Seller may, by mutual agreement, further extend the closing date. Lacking such extension, either party may declare this Purchase Agreement canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a Cancellation of Purchase Agreement confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer.

SUBDIVISION OF LAND: If this sale constitutes or requires a subdivision of land owned by Seller, Seller shall pay all subdivision expenses and obtain all necessary governmental approvals. Seller warrants that the legal description of the real property to be conveyed has been or shall be approved for recording as of the date of closing. Seller warrants that the buildings are or shall be constructed entirely within the boundary lines of the property. Seller warrants that there is a right of access to the property from a public right-of-way. These warranties shall survive the delivery of the deed or contract for deed.

Seller warrants that prior to the closing, payment in full will have been made for all labor, materials, machinery, fixtures or tools furnished within the 120 days immediately preceding the closing in connection with construction, alteration or repair of any structure on, or improvement to, the property.

Seller warrants that Seller has not received any notice from any governmental authority as to condemnation proceedings, or violation of any law, ordinance or regulation. If the property is subject to restrictive covenants, Seller warrants that Seller has not received any notice from any person or authority as to a breach of the covenants. Any such notices received by Seller shall be provided to Buyer immediately.

Seller agrees to allow reasonable access to the property for performance of any surveys or inspections agreed to herein.

RISK OF LOSS: If there is any loss or damage to the property between the date hereof and the date of closing for any reason, including fire, vandalism, flood, earthquake or act of God, the risk of loss shall be on Seller. If the property is destroyed or substantially damaged before the closing date, this Purchase Agreement is canceled, at Buyer's option, by written notice to Seller or licensee representing or assisting Seller. If Buyer cancels this Purchase Agreement, Buyer and Seller shall immediately sign a Cancellation of Purchase Agreement confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer.

TIME OF ESSENCE: Time is of the essence in this Purchase Agreement.

ENTIRE AGREEMENT: This Purchase Agreement, any attached exhibits and any addenda or amendments signed by the parties shall constitute the entire agreement between Seller and Buyer and supersedes any other written or oral agreements between Seller and Buyer. This Purchase Agreement can be modified or canceled only in writing signed by Seller and Buyer or by operation of law. All monetary sums are deemed to be United States currency for purposes of this agreement. Buyer or Seller may be required to pay certain closing costs, which may effectively reduce the proceeds from the sale or increase the cash outlay at closing.

ACCEPTANCE: To be binding, this Purchase Agreement must be fully executed by both parties and a copy must be delivered.

DEFAULT: If Buyer defaults in any of the agreements hereunder, Seller may terminate this Purchase Agreement under the provisions of MN Statute 559.21. If either Buyer or Seller defaults in any of the agreements hereunder or there exists an unfulfilled condition after the date specified for fulfillment, either party may cancel this Purchase Agreement under MN Statute 559.217, Subd. 3. Whenever it is provided herein that the Purchase Agreement is canceled, said language shall be deemed a provision authorizing a Declaratory Cancellation under MN Statute 559.217, Subd. 4.

If this Purchase Agreement is not canceled or terminated as provided hereunder, Buyer or Seller may seek actual damages for breach of this Purchase Agreement or specific performance of this Purchase Agreement; and, as to specific performance, such action must be commenced within six months after such right of action arises.

NOTICE REGARDING PREDATORY OFFENDER INFORMATION: Information regarding the predatory offender registry and persons registered with the predatory offender registry under MN Statute 243.166 may be obtained by contacting the local law enforcement offices in the community where the property is located or the Minnesota Department of Corrections at (651) 642-0200, or from the Department of Corrections web site at www.corr.state.mn.us.

MN:PA-2 (8/05)

**PURCHASE AGREEMENT**

126. Address _6555 Saunders Lake Drive_
127. Page 3  Date _7-24-06_

128. Buyer shall pay ☐ PRORATED FROM DAY OF CLOSING ☐ ____ 12ths OF ☐ ALL ☒ NO real estate taxes due and payable in

129. the year 20 _06_ .
130. Seller shall pay ☐ PRORATED TO DAY OF CLOSING ☐ ____ 12ths OF ☒ ALL ☐ NO real estate taxes due and payable in the year

131. 20 _06_ . If the closing date is changed, the real estate taxes paid shall, if prorated, be adjusted to the new closing date. Seller
132. warrants taxes due and payable in the year 20 _06_ shall be ☒ FULL- ☐ PART ☐ NON- homestead classification.

133. If part- or non-homestead classification is checked, Seller agrees to pay Buyer at closing $ ____ N/A
134. toward the non-homestead real estate taxes. Buyer agrees to pay any remaining balance of non-homestead taxes when they become
135. due and payable. Buyer shall pay real estate taxes due and payable in the year following closing and thereafter, the payment of which is
136. not otherwise herein provided. No representations are made concerning the amount of subsequent real estate taxes.

137. POSSESSION: Seller shall deliver possession of the property no later than _8-7-06_ after closing.
138. All interest; unit owners' association dues; rents; and charges for city water, city sewer, electricity and natural gas shall be prorated
139. between the parties as of date of closing. Buyer shall pay Seller for remaining gallons of fuel oil or liquid petroleum gas on the day of
140. closing, at the rate of the last fill by Seller. Seller agrees to remove ALL DEBRIS AND ALL PERSONAL PROPERTY NOT INCLUDED
141. HEREIN from the property by possession date.

142. ENVIRONMENTAL CONCERNS: To the best of Seller's knowledge, there are no hazardous substances or underground storage
143. tanks except herein noted: _N/A_
144.

145. (Check appropriate boxes.)
146. SELLER WARRANTS THAT THE PROPERTY IS EITHER DIRECTLY OR INDIRECTLY CONNECTED TO:
147. CITY SEWER ☒ YES  ☐ NO  /  CITY WATER ☒ YES  ☐ NO

148. PRIVATE WELL
149. ☒ PRIVATE WELL NOT APPLICABLE TO THIS TRANSACTION
150. ☐ SELLER / ☐ BUYER AGREES TO OBTAIN (AND PROVIDE TO BUYER) A WATER QUALITY TEST BY ____ , 20 ____

151. a. If the water quality test results are not obtained by the date specified above, then either party may declare this Purchase
152. Agreement canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this
153. Purchase Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a
154. Cancellation of Purchase Agreement confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer.

155. b. If the water quality test results show the water is not potable or otherwise not in compliance with governmental water quality standards,
156. then the parties may agree in writing, on or before the date of closing, to either i) negotiate an allocation between Seller and Buyer of
157. those costs necessary to bring the water into potable condition and into compliance with governmental water quality standards; or ii)
158. Seller shall provide for the payment of said costs; or iii) Buyer shall assume full responsibility of said costs. In the absence of such
159. agreement, either party may declare this Purchase Agreement canceled by written notice to the other party, or licensee representing or
160. assisting the other party, in which case this Purchase Agreement is canceled. If either party declares this Purchase Agreement
161. canceled, Buyer and Seller shall immediately sign a Cancellation of Purchase Agreement confirming said cancellation and directing all
162. earnest money paid hereunder to be refunded to Buyer.

163. (Check appropriate boxes.)
164. PRIVATE SEWER SYSTEM
165. ☒ PRIVATE SEWER SYSTEM NOT APPLICABLE TO THIS TRANSACTION
166. ☐ SELLER / ☐ BUYER AGREES TO OBTAIN (AND PROVIDE TO BUYER) A LICENSED INSPECTOR'S SEPTIC SYSTEM INSPECTION

167. REPORT OR NOTICE INDICATING IF THE SYSTEM COMPLIES WITH APPLICABLE REGULATIONS BY ____ , 20 ____
168. NOTICE: A VALID CERTIFICATE OF COMPLIANCE FOR THE SYSTEM MAY SATISFY THIS OBLIGATION.

169. a. In the event the inspection report or notice is not obtained by the date specified above, then either party may declare this Purchase
170. Agreement canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this Purchase
171. Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a
172. Cancellation of Purchase Agreement confirming said cancellation and directing all earnest money paid hereunder to be refunded to
173. Buyer.

174. b. In the event the inspection report indicates that the private sewer system is not in compliance with applicable regulations, then the parties may
175. agree in writing on or before the closing date to either i) negotiate an allocation between Seller and Buyer of those costs necessary to
176. bring the private sewer system into compliance with applicable regulations; or ii) Seller shall provide for the payment of said costs; or iii) Buyer
177. shall assume full responsibility of said costs. In the absence of such agreement, either party may declare this Purchase Agreement
178. canceled by written notice to the other party, or licensee representing or assisting the other party, in which case this Purchase
179. Agreement is canceled. If either party declares this Purchase Agreement canceled, Buyer and Seller shall immediately sign a
180. Cancellation of Purchase Agreement confirming said cancellation and directing all earnest money paid hereunder to be refunded to Buyer.

181. BUYER HAS RECEIVED THE WELL DISCLOSURE STATEMENT OR A STATEMENT THAT NO WELL EXISTS ON THE PROPERTY, AND
182. A SEPTIC SYSTEM DISCLOSURE STATEMENT OR A STATEMENT THAT NO SEPTIC SYSTEM EXISTS ON OR SERVES THE
183. PROPERTY AS REQUIRED BY MINNESOTA STATUTES.

184. SELLER WARRANTS THAT CENTRAL AIR-CONDITIONING, HEATING, PLUMBING AND WIRING SYSTEMS USED AND LOCATED ON
185. SAID PROPERTY SHALL BE IN WORKING ORDER ON DATE OF CLOSING, EXCEPT AS NOTED IN THIS AGREEMENT.
186. BUYER HAS THE RIGHT TO A WALK-THROUGH REVIEW OF THE PROPERTY PRIOR TO CLOSING TO ESTABLISH THAT THE
187. PROPERTY IS IN SUBSTANTIALLY THE SAME CONDITION AS OF THE DATE OF PURCHASE AGREEMENT.

188. BUYER ☐ HAS ☒ HAS NOT RECEIVED A SELLER'S PROPERTY DISCLOSURE STATEMENT OR A SELLER'S DISCLOSURE
189. ALTERNATIVES FORM.
190. BUYER HAS RECEIVED THE INSPECTION REPORTS, IF REQUIRED BY MUNICIPALITY.
191. SELLER AGREES TO NOTIFY BUYER IMMEDIATELY IN WRITING OF ANY SUBSTANTIVE CHANGES FROM ANY PRIOR
192. REPRESENTATIONS REGARDING THE PROPERTY.
193. IN THE EVENT A SELLER'S DISCLOSURE ALTERNATIVES FORM IS USED IN THIS TRANSACTION, DISREGARD LINES 195 THROUGH
194. 199.
195. BUYER ACKNOWLEDGES THAT NO ORAL REPRESENTATIONS HAVE BEEN MADE REGARDING POSSIBLE PROBLEMS OF WATER
196. IN BASEMENT OR DAMAGE CAUSED BY WATER ICE OR ICE BUILDUP ON ROOF OF THE PROPERTY, AND BUYER RELIES SOLELY
197. IN THAT REGARD ON THE FOLLOWING STATEMENT BY SELLER:
198. SELLER ☐ HAS ☒ HAS NOT HAD A WET BASEMENT AND ☐ HAS ☒ HAS NOT HAD ROOF, WALL OR CEILING DAMAGE CAUSED
199. BY WATER OR ICE BUILDUP.

MN:PA-3 (8/05)

**PURCHASE AGREEMENT**

200. Address  6565 Saunder's Lake Drive

201. Page 4     Date  7-24-06

**NOTICE**

202.
203. ____none____ (Licensee)     is ☐ Seller's Agent ☐ Buyer's Agent ☐ Dual Agent ☐ Facilitator.
                                        (Check one)
204. _____ (Company)

205. ____none____ (Licensee)     is ☐ Seller's Agent ☐ Buyer's Agent ☐ Dual Agent ☐ Facilitator.
                                        (Check one)
206. _____ (Company)

207. **THIS NOTICE DOES NOT SATISFY MINNESOTA STATUTORY AGENCY DISCLOSURE REQUIREMENTS.**

208.                          **DUAL AGENCY REPRESENTATION**

209. **PLEASE CHECK _ONE_ OF THE FOLLOWING SELECTIONS:**

210. ☒ Dual Agency representation DOES NOT apply in this transaction. *Disregard lines 211-224.*

211. ☐ Dual Agency representation DOES apply in this transaction. *Complete the disclosure in lines 212-224.*

212. Broker represents both the Seller(s) and the Buyer(s) of the property involved in this transaction, which creates a dual agency. This
213. means that Broker and its salespersons owe fiduciary duties to both Seller(s) and Buyer(s). Because the parties may have conflicting
214. interests, Broker and its salespersons are prohibited from advocating exclusively for either party. Broker cannot act as a dual agent in this
215. transaction without the consent of both Seller(s) and Buyer(s). Seller(s) and Buyer(s) acknowledge that
216. (1) confidential information communicated to Broker which regards price, terms or motivation to buy or sell will remain confidential
217. unless Seller(s) or Buyer(s) instructs Broker in writing to disclose this information. Other information will be shared;
218. (2) Broker and its salespersons will not represent the interest of either party to the detriment of the other; and
219. (3) within the limits of dual agency, Broker and its salespersons will work diligently to facilitate the mechanics of the sale.
220. With the knowledge and understanding of the explanation above, Seller(s) and Buyer(s) authorize and instruct Broker and its
221. salespersons to act as dual agents in this transaction.

222.
_____(Seller)          _____(Buyer)

223.
_____(Seller)          _____(Buyer)

224.
_____(Date)            _____(Date)

225. OTHER: This purchase agreement is contingent upon the buyer's financing being approved.

226.
227.
228.
229.
230.
231.
232.
233.
234.
235.
236.

237. Other addenda may be attached which are made a part of this Purchase Agreement. (Enter total number of pages of this Purchase
238. Agreement, including addenda, on line two (2) of page one (1).)

Jul. 21, 2006 11:17AM    FSBO SHOPPE/HOMEAVENUE                    No. 1653    P. 5

## PURCHASE AGREEMENT

239. Address  0555 Saunders Lake Drive
240. Page 5    Date  7-24-06

241. I, the owner of the property, accept this agreement and          I agree to purchase the property for the price and in accordance
242. authorize the listing broker to withdraw said property from  N/A  with the terms and conditions set forth above.
243. the market, unless instructed otherwise in writing.              I have reviewed all pages of this Purchase Agreement.
244. I have reviewed all pages of this Purchase Agreement.

245. ☐ If checked, this Agreement is subject to attached
246. Counteroffer Addendum.

247. (X) _____        (X) _Dodie R. Taylor_  7-26-06
     (Seller's Signature)          (Date)    (Buyer's Signature)          (Date)

248. (X) _____        (X) _Dodie R. Taylor_
     (Seller's Printed Name)                  (Buyer's Printed Name)

249. (X) _____        (X) _Divorced_
     (Marital Status)                         (Marital Status)

250. (X) _____        X _____
     (Seller's Signature)          (Date)    (Buyer's Signature)          (Date)

251. (X) _____        X _____
     (Seller's Printed Name)                  (Buyer's Printed Name)

252. (X) _____        X _____
     (Marital Status)                         (Marital Status)

253. FINAL ACCEPTANCE DATE _7-25-06_

254.               THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).
255.          IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

256. I ACKNOWLEDGE THAT I HAVE RECEIVED AND HAVE HAD THE OPPORTUNITY TO REVIEW THE ARBITRATION DISCLOSURE AND
257. RESIDENTIAL REAL PROPERTY ARBITRATION AGREEMENT, WHICH IS AN OPTIONAL, VOLUNTARY AGREEMENT AND IS NOT PART OF THIS
258. PURCHASE AGREEMENT.

259. SELLER(S) _____        BUYER(S) _____

260. SELLER(S) _____        BUYER(S) _____

MN:PA-5 (8/05)

**ADDENDUM TO
PURCHASE AGREEMENT**

This form approved by the Minnesota Association of
REALTORS®, which disclaims any liability
arising out of use or misuse of this form.
©2000, Minnesota Association of REALTORS®, Edina, MN

1. Date _7-24-06_

2. Page _6 of 7_

3. Addendum to Purchase Agreement between parties dated _7-24_, 20 _06_ pertaining to the purchase

4. and sale of the property at _6555 Saunders Lake Drive South_

The sellers shall carry a Private second Mortgage Note for the sum of: One Hundred Twenty-Nine Thousand Two Hundred Fifty Dollars ($129,750.00) at the annual percentage rate of 4%, Amortized over 30 years (360 months). The buyer will pay the sellers Interest only payments in the sum of: Four Hundred Thirty-Two and .50 dollars ($432.50) per month for the first two years (24 months) beginning on October 1st, 2006 and resuming until September 1st, 2008. And will pay the sellers fully amortized payment of: Six Hundred Nineteen and .45 dollars ($619.45) beginning on October 1st 2008. The balance of the Mortgage Note shall be due and payable in full on or before September 31st, 2036 with no penalty for pre-payment.

35. X _____  (Seller)  _____ (Date)   X _Dodie R. Taylor_ (Buyer)   _7-26 06_ (Date)

36. X _____  (Seller)  _____ (Date)   _____ (Buyer)   _____ (Date)

**THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYERS AND SELLERS.
IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN-APA (9/00)

**FINANCING ADDENDUM**
**SELLER'S CONTRIBUTIONS TO**
**CLOSING COSTS AND DISCOUNT**
**POINTS**

This form approved by the Minnesota Association of
REALTORS®, which disclaims any liability
arising out of use or misuse of this form.
© 2004 Minnesota Association of REALTORS®, Edina, MN

1. Date _____ 7-24-06 _____

2. Page _____ 7 of 7 _____

3. Addendum to Purchase Agreement between parties, dated ___ 7-24 ___, 20 06 ___, pertaining to the purchase

4. and sale of the property at ___ 16555 Saunders Lake Drive South

5. ___ Minnetrista, Minnesota

6. Seller agrees to pay up to (check one):

7. ☐  $ _____, or

8. ☒  3 percent (%) of the sale price; or

9. ☐  _____ percent (%) of the mortgage amount

10. towards the Buyer's closing costs, prepaid items, and/or mortgage discount points as specified below. Any amount of
11. Seller's contribution that exceeds Buyer's actual costs, or which cannot be used because the Seller's contribution exceeds
12. the maximum Seller contribution allowed by law or by mortgage requirements, shall be retained by the Seller.

13. The Buyer may use these funds toward:

14. ☒  Closing costs

15. ☒  Prepaids

16. ☒  Discount points (percent must be based upon mortgage amount)

17. **NOTE:** The amount paid by the Seller cannot exceed the maximum Seller contribution allowed by FHA, DVA or
18. lender. All funds paid by the Seller on behalf of the Buyer must be stated on the HUD-1 at closing.

19. X _____  X _Dodie R. Taylor_ 7-26-06
       (Seller)              (Date)      (Buyer)              (Date)

20. X _____  X _____
       (Seller)              (Date)      (Buyer)              (Date)

21. **THIS IS A LEGALLY BINDING CONTRACT BETWEEN BUYER(S) AND SELLER(S).**
22. **IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.**

MN: FAMDP (8/04)

**DODIE R. TAYLOR**
11913 70TH PL. N   763-315-1066
MAPLE GROVE, MN   55369-5422

17-2/910 107                    2134

Date 7-26-06

Pay to the order of Daniel & Tracy Pfeffer          $ 1.00

One & 00/100                                        Dollars

**US BANK**
UBANK 24-HOUR PHONE BANKING
1-800 US BANKS
(612) US BANKS

For EM 6555 Saunderslake Dr S.   Dodie R. Taylor          MP

⑈091000022⑆1047704060800⑈2134

ROSEWOOD

---

**DODIE R. TAYLOR**
11913 70TH PL. N   763-315-1066
MAPLE GROVE, MN   55369-5422

17-2/910 107                    2134

Date 7-26-06

Pay to the order of Daniel & Tracy Pfeffer          $ 1.00

One & 00/100                                        Dollars

**US BANK**
UBANK 24-HOUR PHONE BANKING
1-800 US BANKS
(612) US BANKS

For EM 6555 Saunderslake Dr S.   Dodie R. Taylor          MP

⑈091000022⑆1047704060800⑈2134

ROSEWOOD