Inc?

**Faith Rocha**
770-888-0023 office
612-964-3816 cell
763-201-5886 fax

American Republic Mortgage/Mortgage Referral Network

From: "Dodie Taylor" <dodiet@wooddalebuilders.com>
To: "'Faith Rocha'" <faithrocha608@hotmail.com>
Subject: RE: another employment verification
Date: Tue, 1 Aug 2006 14:13:33 -0500

Oh, ok. No I am not going to verify my own employment. ;-) I had the person that handles payroll do it. She said the company name had "Royal" in it, she thinks.

**From:** Faith Rocha [mailto:faithrocha608@hotmail.com]
**Sent:** Tuesday, August 01, 2006 2:03 PM
**To:** dodiet@wooddalebuilders.com
**Subject:** RE: another employment verification

Ok. You will probably have a couple people call to do a verbal verif. I have your loan with two lenders. and even though they have a written verification they will still call and verbally verify. You can call them back and verify your own income, just don't tell them it's you. LOL!

**Faith Rocha**
770-888-0023 office
612-964-3816 cell
763-201-5886 fax

American Republic Mortgage/Mortgage Referral Network

From: "Dodie Taylor" <dodiet@wooddalebuilders.com>
To: "'Faith Rocha'" <faithrocha608@hotmail.com>
Subject: another employment verification
Date: Tue, 1 Aug 2006 13:43:01 -0500

Hi Faith,

I just received a voicemail from a Patty wanting to verify my employment. She left me a message! Not very bright considering my voice message clearly states my name. Do you know what this is for and who would be requesting this? I should just call her back and verify my own employment. ;-)

Dodie



**EXHIBIT**

tabbies ⎰6

**From:** Faith Rocha [faithrocha608@hotmail.com]
**Sent:** Monday, August 07, 2006 1:40 PM
**To:** dodiet@wooddalebuilders.com
**Subject:** RE: Question

The Pfeffers will sign in Omaha. I will get you keys to the place if you want them. Probably a good idea. The mother was going to live there for insurance purposes. But being that were financing it as a 2nd home for you, I don't think it's necessary. Unless you want her too. Also I will get back with you about the closing time. Please fax me a deposit slip or cancelled check for the account that the money is going to. Since of course the title company that you'll be closing with isn't party to the CD and the funds will be wired from Omaha. I am still getting all the numbers in place today. I will probably have the CD and a 2nd agreement for the escrow monies done later on in the afternoon/ early evening. WE need everyone to sign that before closing.

*Faith Rocha*
770-888-0023 office
612-964-3816 cell
763-201-5886 fax

American Republic Mortgage/Mortgage Referral Network

**From:** *"Dodie Taylor" <dodiet@wooddalebuilders.com>*
**To:** *"'Faith Rocha'" <faithrocha608@hotmail.com>*
**Subject:** *Question*
**Date:** *Mon, 7 Aug 2006 13:25:26 -0500*

I am just curious? Will someone be living in this house? Was that ever decided? Will I get any keys to this place?

Dodie

EXHIBIT
7

## ADDENDUM TO PUCHASE AGREEMENT
### Dated: __07/24/2006

The buyer and the sellers agree to extend the to extend the closing date to 08/10/2006.

Seller,                                      Buyers,

X _Dodie Taylor_    8-8-06    X _____    8·8·06
Dodie Taylor         Date          Daniel Pfeffer        Date

                             X _Tracy Pfeffer_   8·8·06
                               Tracy Pfeffer          Date

EXHIBIT

tabbies

8

## CONTRACT FOR DEED

No delinquent taxes and transfer entered;
Certificate of Real Estate Value
( )filed ( )not required
_____, 20 _____.

_____
County Auditor
By _____
Deputy

_____

(reserved for mortgage registry tax payment data)

(reserved for recording data)

**MORTGAGE REGISTRY TAX DUE HEREON:**

$_____

Date: _____, 20__ _____

THIS CONTRACT FOR DEED is made on the above date by _Dodie Taylor_____
_____, Seller (whether one or more), and
_____Tracy Pfeffer_____
_____, Purchaser (whether one or more).

Seller and Purchaser agree to the following terms:

1. **PROPERTY DESCRIPTION.** Seller hereby sells, and Purchaser hereby buys, real
   property in _Hennepin_____ County, Minnesota, described as follows:

   **6555 SOUTH SAUNDERS DRIVE
   MINNETRISTA, MINNESTOA 55364**

   **LOT 10, BLOCK 2 SAUNDERS LAKE SOUTH**

   Together with all hereditaments and appurtenances belonging thereto (the Property).

2. **TITLE.** Seller warrants that title to the Property is, on the date of this contract, subject
   only to the following exceptions:
   - (a) Covenants, conditions, restrictions, declarations and easements of record, if any;
   - (b) Reservations of minerals or minerals rights by the State of Minnesota, if any;
   - (c) Building, zoning and subdivision laws and regulations;
   - (d) The lien of real estate taxes and installments of special assessments which are
     payable by Purchaser pursuant to paragraph 6 of this contract; and
   - (e) The following liens or encumbrances:

3. **DELIVERY OF DEED AND EVIDENCE OF TITLE.** Upon Purchaser's prompt and full
   Performance of this contract, Seller shall:
   - (a) Execute, acknowledge and deliver to Purchaser a   Deed, in
     recordable form, conveying marketable title to the Property to Purchaser, subject
     only to the following exceptions:
     - (i) Those exceptions referred to in paragraph 2(a), (b), (c) and (d) of this
       contract;
     - (ii) Liens, encumbrances, adverse claims or other matters which Purchaser has
       created, suffered or permitted to accrue after the date of this contract; and
     - (iii) The following liens or encumbrances:
   - (b) Deliver to Purchaser the abstract of title to the Property or, if the title is
     registered, the owner's duplicate certificate of title.

4. **PURCHASE PRICE.** Purchaser shall pay to Seller: the sum of: Eight Hundred Sixty-
   Five Thousand Dollars_____
   ($___865,000.00_____), for the purchase price for the Property, payable as
   follows:
   1ST mortgage *interest only* monthly Installments beginning October 1st, 2006 of $5117.92
   payable to: Royal Crown Bankcorp and/or their assigns as their interests may appear

**EXHIBIT**

9

2nd mortgage *interest only* monthly installments of $1913.73 beginning October 1st, 2006 Royal Crown Bankcorp and/or their assigns as their interests may appear

Eight Hundred Sixty-Five Thousand Dollars ($865,000.00) is due and payable in full on or before December 30th, 2006, To be paid from the proceeds of the sale of the property from Tracy Pfeffer to a buyer (to be determined) and the escrow account managed by Dodie Taylor, trustee.

5. **PREPAYMENT.** Unless otherwise provided in the mortgage note owed by Dodie Taylor, Purchaser shall have the

right to fully or partially prepay this contract any time without penalty. Any partial prepayment shall be applied first to payment of amounts then due under this contract, including unpaid accrued interest, and the balance shall be applied to the principal installments to be paid in the inverse order of their maturity. Partial prepayment shall not postpone the due date of the installments to be paid pursuant to this contract or change the amount of such installments.

6. **REAL ESTATE TAXES AND ASSESSMENTS.** Purchase shall pay, before penalty accrues, all real estate taxes and installments of special assessments assessed against the Property which are due and payable in the year 2006__ and in all subsequent years. Real estate taxes and installments of special assessments which are due and payable in the year in which this contract is dated shall be paid by the purchaser.

Seller warrants that the real estate taxes and installments of special assessments which were due and payable in the years preceding the year in which this contract is dated are paid in full.

7. **PROPERTY INSURANCE.**
(a) **INSURED RISKS AND AMOUNT.** Purchaser shall keep all buildings, improvements and fixtures now or later located on or a part of the Property insured against loss by fire, extended coverage perils, vandalism, malicious mischief.

If any of the buildings, improvements or fixtures are located in a federally designated flood prone area, and if flood insurance is available for that area, Purchaser shall procure and maintain flood insurance in amounts reasonably satisfactory to Seller.
(b) **OTHER TERMS.** The insurance policy shall contain a loss payable clause in favor of Seller which provides that Seller's right to recover under the insurance shall not be impaired by any acts or omissions of Purchaser or Seller, and that Seller shall otherwise be afforded all rights and privileges customarily provided a mortgagee under the so-called standard mortgage clause.
(c) **NOTICE OF DAMAGE.** In the event of damage to the Property by fire or other casualty, Purchaser shall promptly give notice of such damage to Seller and the insurance company.

8. **DAMAGE TO THE PROPERTY.**
(a) **APPLICATION OF INSURANCE PROCEEDS.** If the Property is damaged by fire or other casualty, the insurance proceeds paid on account of such damage shall be applied to payment of the amounts payable by Purchaser under this contract, even if such amounts are not then due to be paid, unless Purchaser makes a permitted election described in the next paragraph. Such amounts shall be first applied to unpaid accrued interest and next to the installments to be paid as provided in this contract in the inverse order of their maturity. Such payment shall not postpone the due date of the installments to be paid pursuant to this contract or change the amount of such installments. The balance of insurance proceeds, if any, shall be the property of Purchaser.
(b) **PURCHASER'S ELECTION TO REBUILD.** If Purchaser is not in default under this contract, or after curing any such default, and if the mortgages in any prior mortgages and sellers in any prior contracts for deed do not require otherwise, Purchaser may elect to have that portion of such insurance proceeds necessary to repair, replace or restore the damaged Property (the repair work) deposited in escrow with a bank or title insurance company qualified to do business in the State of Minnesota, or such other party as may be mutually agreeable to Seller and Purchaser. The election may only be made by written notice to Seller within sixty days after the damage occurs. Also, the election will only be permitted if the plans and specifications and contracts for the repair work are approved by Seller, which approval Seller shall not unreasonably withhold or delay. If such a permitted election is made by Purchaser, Seller and Purchaser shall jointly deposit, when paid, such insurance proceeds into such escrow. If such insurance proceeds are insufficient for the repair work, Purchaser shall, before the commencement of the repair work, deposit into such escrow sufficient additional money to insure the full payment for the repair work. Even if the insurance proceeds are unavailable or are insufficient to pay the cost of the repair work, Purchase shall at all times be responsible to pay the full cost of the repair work. All escrowed funds shall be disbursed by the

escrowee in accordance with generally accepted sound construction disbursement procedures. The costs incurred or to be incurred on account of such escrow shall be deposited by Purchaser into such escrow before the commencement of the repair work. Purchaser shall complete the repair work as soon as reasonably possible and in a good and workmanlike manner, and in any event the repair work shall be completed by Purchaser within one year after the damage occurs. If, following the completion of and payment for the repair work, there remain any undisbursed escrow funds, such funds shall be applied to payment of the amounts payable by Purchaser under this contract in accordance with paragraph 8 (a) above.

9. **INJURY OR DAMAGE OCCURRING ON THE PROPERTY.**
   (a) **LIABILITY.** Seller shall be free from liability and claims for damages by reason of injuries occurring on or after the date of this contract to any person or persons or property while on or about the Property. Purchaser shall defend and indemnify Seller from all liability, loss, costs and obligations, including reasonable attorneys' fees, on account of arising out of ay such injuries. However, Purchaser shall have no liability or obligation to Seller for such injuries which are caused by the negligence or intentional wrongful acts or omissions of Seller.
   (b) **LIABILITY INSURANCE.** Purchaser shall, at Purchaser's own expense, procure and maintain liability insurance against claims for bodily injury, death and property damage occurring on or about the Property in amounts reasonably satisfactory to Seller and naming Seller as an additional insured.
10. **INSURANCE, GENERALLY.** The insurance which Purchaser is required to procure and maintain pursuant to paragraphs 7 and 9 of this contract shall be issued by an insurance company or companies licensed to do business in the State of Minnesota and acceptable to Seller. The insurance shall be maintained by Purchaser at all times while any amount remains unpaid under this contract. The insurance policies shall provide for not less than ten days written notice to Seller before cancellation, non-renewal, termination or change in coverage, and Purchaser shall deliver to Seller a duplicate original or certificate of such insurance policy or policies.
11. **CONDEMNATION.** If all or any part of the Property is taken in condemnation proceedings instituted under power of eminent domain or is conveyed in lieu thereof under threat of condemnation, the money paid pursuant to such condemnation or conveyance in lieu thereof under threat of condemnation, the money paid pursuant to such condemnation or conveyance in lieu thereof shall be applied to payment of the amounts payable by Purchaser under this contract, even if such amounts are not then due to be paid. Such amounts shall be applied first to unpaid accrued interest and next to the installments to be paid as provided in this contract in the inverse order of their maturity. Such payment shall not postpone the due date of the installments to be paid pursuant to this contract or change the amount of such installments. The balance, if any, shall be the property of Purchaser.
12. **WASTE, REPAIR AND LIENS.** Purchaser shall not remove or demolish any buildings, improvements or fixtures now or later located on or a part of the Property, nor shall Purchaser commit or allow waste of the Property. Purchaser shall maintain the Property in good condition and repair. Purchaser shall not create or permit to accrue liens or adverse claims against the Property which constitute a lien or claim against Seller's interest in the Property. Purchaser shall pay to Seller all amounts, costs and expenses, including reasonable attorneys' fees, incurred by Seller to remove any such liens or adverse claims.
13. **DEED AND MORTGAGE REGISTRY TAXES.** Purchaser shall, upon Purchaser's full performance of this contract, pay the deed tax due upon the recording or filing of the deed to be delivered by Seller to Purchaser. The mortgage registry tax due upon the recording or filing of this contract shall be paid by the party who records or files this contract; however, this provision shall not impair the right of Seller to collect from Purchaser the amount of such tax actually paid by Seller as provided in the applicable law governing default and service of notice of termination of this contract.
14. **NOTICE OF ASSIGNMENT.** If either Seller or Purchaser assigns their interest in the Property, a copy of such assignment shall promptly be furnished to the non-assigning party.
15. **PROTECTION OF INTERESTS.** If Purchaser fails to pay any sum of money required under the terms of this contract or fails to perform any of Purchaser's obligations as set forth in this contract, Seller may, at Seller's option, pay the same or cause the same to be performed, or both, and the amounts so paid by Seller and the cost of such performance shall be payable at once, with interest at the rate stated in paragraph 4 of this contract, as an additional amount due Seller under this contract. If there now exists, or if Seller hereafter creates, suffers or permits to accrue, any mortgage, contract for deed, lien or encumbrance against the Property which is not herein expressly assumed by Purchaser, and provided Purchaser is not in default under this contract, Seller shall timely pay all amounts due thereon, and if Seller fails to do so, Purchaser may, at Purchaser's option, pay any such delinquent amounts and deduct the amounts paid from the installment(s) next coming due under this contract.
16. **DEFAULT.** The time of performance by Purchaser of the terms of this contract is an

essential part of this contract. Should Purchaser fail to timely perform any of the terms of this contract, Seller may, at Seller's option, elect to declare this contract cancelled and terminated by notice to Purchaser in accordance with applicable law. All rights, title and interest acquired under this contract by Purchaser shall then cease and terminate, and all improvements made upon the Property and all payments made by Purchaser pursuant to this contract shall belong to Seller as liquidated damages for breach of this contract. Neither the extension of the time for payment of any sum of money to be paid hereunder nor any waiver by Seller of Seller's rights to declare this contract forfeited by reason of any breach shall in any manner affect Seller's right to cancel this contract because of defaults subsequently occurring, and no extension of time shall be valid unless agreed to in writing. After service of notice of default and failure to cure such default within the period allowed by law, Purchaser, shall, upon demand, surrender possession of the Property to Seller, but Purchaser shall be entitled to possession of the Property until the expiration of such period.

17. BINDING EFFECT. The terms of this contract shall run with the land and bind the parties hereto and their successors in interest.

18. HEADINGS. Headings of the paragraphs of this contract are for convenience only and do not define, limit or construe the contents of such paragraphs.

19. ASSESSMENTS BY OWNERS' ASSOCIATION. If the Property is subject to a recorded declaration providing for assessments to be levied against the Property by any owners' association, which assessments may become a lien against the Property if not paid, then:

(a) Purchaser shall promptly pay, when due, all assessments imposed by the owners' association or other governing body as required by the provisions of the declaration or other related documents; and

(b) So long as the owner's association maintains a master or blanket policy of insurance against fire, extended coverage perils and such other hazards and in such amounts as are required by this contract, then:

    (i) Purchaser's obligation in this contract to maintain hazard insurance coverage on the Property is satisfied; and

    (ii) The provisions in paragraph 8 of this contract regarding application of insurance proceeds shall be superceded by the provisions of the declaration or other related documents; and

    (iii) In the event of a distribution of insurance proceeds in lieu of restoration or repair following an insured casualty loss to the Property, any such proceeds payable to Purchaser are hereby assigned and shall be paid to Seller for application to the sum secured by this contract, with the excess, if any, paid to Purchaser.

20. **ADDITIONAL TERMS: If the property is not paid in full by December 31, 2006. The seller, Dodie Taylor upon her discretion may extend the contract.** Additional terms maybe required.

SELLER(S)

_Dodie Taylor_

PURCHASER(S)

_Tracy Pfeffer_

STATE OF MINNESOTA )
                 ) ss.
County of __HENNEPIN__ )

The foregoing instrument was acknowledged before me this _11th_ day of _October_,
20 _06_, by _Dodie Taylor_

KRISTEN CLEO KUELBS-SEDAHL
Notary Public
Minnesota
My Commission Expires January 31, 2010

_Kristen Cleo Kuelbs-Sedahl_
Signature of Notary Public Or Other Official

STATE OF NEBRASKA )
                 ) ss.
County of __Douglas__ )

The foregoing instrument was acknowledged before me this _9th_ day of _September_,
20 _06_, by _Tracy Pfeffer_



GENERAL NOTARY- State of Nebraska
GREGORY D. PARDE
My Comm. Exp. Apr. 5, 2008

_____
Signature of Notary Public Or Other Official

Tax Statements for the real property described in this
Instrument should be sent to:

FAILURE TO RECORD OR FILE THIS CONTRACT FOR DEED MAY GIVE OTHER PARTIES
PRIORITY OVER PURCHASER'S INTEREST IN THE PROPERTY.

Addendum to Contract For Deed

Dated: 8/10/06

Re: _Real Property Investment located at: 6555 South Saunders Drive, Minnetrista, MN 55364_

| 06/07/2006 | For CONSULTING services rendered | |
|---|---|---|
| | 2% of investment Origination | $17,300.00 |
| | | |
| TOTAL DUE | | $17,300.00 |

I/we agree to on the same day of closing & funding the financing of the above referenced property to real estate investor, Dodie Taylor and upon receiving wire transfer proceeds from this transaction to remit immediately payment in full via wire transfer to the following bank account:

Owned by: Faith M Rocha
Bank: Wells Fargo Bank, N.A.
Minnesota
Routing Number: 530000392
Account Number: 7140170351

I understand that Failure to remit payment in full immediately upon receiving the proceeds from this real estate transaction will be considered theft and subject to criminal prosecution and will cancel the Contract for Deed between Dodie Taylor and me/us and forfeit our right to receive proceeds from this and future transactions involving the above mentioned property.

X _____  8-8-06       X _____  8-8-06
Darliei Pfeffer            Date              Tracy Pfeffer            Date

**EXHIBIT**

**10**

**Addendum to Contract For Deed**

Dated: _8/10/06_

Re: The Escrow Account for _Real Property Investment located at: 6565 South Saunders Drive, Minnetrista, MN 55364._

I/We agree to wire all of proceeds received on the Hud Settlement statement for the transfer of the above real property form Daniel & Tracy Pfeffer to Dodie Taylor less the following:

A) $17,3000 payable to Faith Rocha, Consultant (see addendum 1)
B) $25,000 payable Dodie Taylor, Investor for payment to finance this transaction payable no later than 08/11/2006 in five equal checks of $5000 each.

to the following account to be held in escrow by Dodie R. Taylor, trustee:

Americana Community Bank

Chanhassen Office

600 Market Street, Suite 100

Chanhassen, MN 55317

Bank Routing number: 091901969

Account Holder: Dodie R. Taylor

Account number: 870287

It is agreed that these funds are to wired on the same day of closing & funding the financing of the above referenced property to real estate investor/trustee, Dodie Taylor and failure to do so will be considered theft and subject to criminal prosecution and will cancel the Contract for Deed and will forfeit our rights to receive any proceeds from this and future transactions involving the above mentioned property.

All wired funds will be held in escrow by Dodie Taylor, trustee until the new Contract for Deed between Daniel Pfeffer & Tracy Pfeffer, husband and wife And Dodie Taylor, investor/trustee has been recorded and the resale of the real property from Daniel & Tracy Pfeffer to a buyer has been completed, less any expenses as outline below:
1) All fees and taxes for recording the new Contract For Deed
2) Home Owner's Insurance premium
3) Monthly payments for interest accrued on both the 1st and 2nd mortgages

**EXHIBIT**

11

August 8, 2006

● Page 2

4) Taxes and closing costs incurred by Dodie Taylor, investor/trustee for the purpose of deeding off title to allow for the future sale of the property between Tracy and Daniel Pfeffer to a buyer.
5) Any other necessary expenses incurred by the investor/trustee, Dodie Taylor with regard to the transfer of this property to Dodie Taylor, The Contract to Daniel & Tracy Pfeffer, and future sale between Daniel & Tracy Pfeffer to a buyer.
6) The balance of the existing mortgages securing the property in the name of Dodie Taylor as originated in the transfer from Daniel & Tracy Pfeffer to Dodie Taylor.

Upon completion of the sale from Daniel & Tracy Pfeffer to a buyer, Dodie Taylor, trustee will within 2 business days provide Daniel & Tracy Pfeffer with a balance sheet accounting for all expenses and mortgage payments made & remit in full any/all remaining funds via wire transfer to an account specified by Daniel & Tracy Pfeffer.

X _____ 8/8/06
Daniel Pfeffer              Date

X _____ 8-8-06
Tracy Pfeffer              Date

X _____ 8-8-06
Dodie Taylor              Date