| A. U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | B. TYPE OF LOAN: | |
|---|---|---|
| | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. | |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER: 06074084A | 7. LOAN NUMBER: 13012104600 |
| | 8. MORTGAGE INS CASE NUMBER: | |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*
1.0  3/98  (06074084A.PFD/06074084A/1)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Dodie Taylor 6555 Saunders Lake Dr. S Minnetrista, MN 55364 | | Royal Crown Bancorp 29400 Kohoutek Way, # 150 Union City, CA 94587 |

| G. PROPERTY LOCATION: 6555 Saunders Lake Dr. S Minnetrista, MN 55364 | H. SETTLEMENT AGENT: 45-0532673 First Union Title | I. SETTLEMENT DATE: August 15, 2006 |
|---|---|---|
| | PLACE OF SETTLEMENT 6600 City West Parkway, Suite #350 Eden Prairie, MN 55344 | |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 2,476.68 | 403. | |
| 104. Payoff First Mortgage | | 404. | |
| 105. Payoff Second Mortgage | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes        to | | 406. City/Town Taxes        to | |
| 107. County Taxes        to | | 407. County Taxes        to | |
| 108. Assessments        to | | 408. Assessments        to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| *120. GROSS AMOUNT DUE FROM BORROWER* | 2,476.68 | *420. GROSS AMOUNT DUE TO SELLER* | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 173,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes        to | | 510. City/Town Taxes        to | |
| 211. County Taxes        to | | 511. County Taxes        to | |
| 212. Assessments        to | | 512. Assessments        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| *220. TOTAL PAID BY/FOR BORROWER* | 173,000.00 | *520. TOTAL REDUCTION AMOUNT DUE SELLER* | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 2,476.68 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 173,000.00) | 602. Less Reductions Due Seller (Line 520) | ( |
| *303. CASH ( FROM ) ( X TO ) BORROWER* | 170,523.32 | *603. CASH ( TO ) ( FROM ) SELLER* | 0.00 |

EXHIBIT

tabbies

13

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ @ % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. to | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % to | | | |
| 802. Loan Discount % to | | | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. Processing Fee to | | | |
| 806. Tax Service Fee to | | | |
| 807. Administration Fee to | | | |
| 808. Document Preparation Fee | | | |
| 809. YSP Paid by Lender | | | |
| 810. Underwriting Fee to Royal Crown Bancorp | | 350.00 | |
| 811. Funding Fee to Royal Crown Bancorp | | 350.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 08/15/06 to 09/01/06 @ $ 61.616400/day ( 17 days %) | | 1,047.48 | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for years to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. City/Town Taxes months @ $ per month | | | |
| 1004. County Taxes months @ $ per month | | | |
| 1005. Assessments months @ $ per month | | | |
| 1006. months @ $ per month | | | |
| 1007. months @ $ per month | | | |
| 1008. Aggregate Adjustment months @ $ per month | | 0.00 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee to | | | |
| 1102. Abstract or Title Search to | | | |
| 1103. Title Examination to | | | |
| 1104. Balloon Endorsement to First Union Title | | | |
| 1105. Document Preparation to | | | |
| 1106. Witness Closing Fee to | | | |
| 1107. Attorney's Fees to | | | |
| (Includes above item numbers: ) | | | |
| 1108. Title Insurance to Stewart Title Guaranty Company | | 198.00 | |
| (Includes above item numbers: ) | | | |
| 1109. Lender's Coverage $ Jr. Policy | | | |
| 1110. Owner's Coverage $ | | | |
| 1111. Name Search First Union Title | | | |
| 1112. Special Assessment Search First Union Title | | | |
| 1113. Survey Endorsement First Union Title | | | |
| 1114. Wire Service Fee to First Union Title | | 15.00 | |
| 1115. | | | |
| 1116. | | | |
| 1117. | | | |
| 1118. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ 46.00; Releases $ | | 46.00 | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage 415.20 Mtg Reg Tax | | 415.20 | |
| 1203. State Tax/Stamps: Deed ; Mortgage State Deed Tax | | | |
| 1204. Conservation Fee to Hennepin County Treasurer | | 5.00 | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | | |
| 1303. Recording Service Fee to First Union Title | | 25.00 | |
| 1304. Courier Service Fee to First Union Title | | 25.00 | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 2,476.68 | |

Certified to be a true copy.

{ 06074084A / 06074084A / 1 }

# ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|  |  |
|---|---|
| Borrower: | Dodie Taylor |
| Lender: | Royal Crown Bancorp |
| Settlement Agent: | First Union Title |
|  | (952)944-9094 |
| Place of Settlement: | 6600 City West Parkway, Suite #350 |
|  | Eden Prairie, MN 55344 |
| Settlement Date: | August 15, 2006 |
| Property Location: | 6555 Saunders Lake Dr. S |
|  | Minnetrista, MN 55364 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Dodie Taylor

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

First Union Title
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(06074084A.PFD/06074084A/1)

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

MIN 1001427-1301210460-5

After Recording Return To:
ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, STE. 150
UNION CITY, CALIFORNIA 94587
Loan Number: 13012104600

DOC ID #:

THIS MORTGAGE is made this 15th     day of AUGUST, 2006 , between the Mortgagor, DODIE TAYLOR, A SINGLE WOMAN

(herein "Borrower"), and the Mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ROYAL CROWN BANCORP, A CALIFORNIA CORPORATION

, ("Lender") is organized and existing under the laws of     CALIFORNIA
and has an address of     29400 KOHOUTEK WAY, STE. 150, UNION CITY, CALIFORNIA 94587

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 173,000.00 , which indebtedness is evidenced by Borrower's note dated AUGUST 15, 2006     and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on SEPTEMBER 1, 2021   ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of HENNEPIN     , State of Minnesota:

---

**MINNESOTA** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

FE-4351(MN) (0209)     FORMSEDGE - (800)635-4111     Initials:_____

A.P.N.: 2211724410037

LOT 10, BLOCK 2, SAUNDERS LAKE SOUTH, HENNEPIN COUNTY, MINNESOTA

PLANNED UNIT DEVELOPMENT RIDER ATTACHED HERETO AND PART OF.
BALLOON RIDER ATTACHED HERETO AND PART OF.
PREPAYMENT RIDER TO SECURITY INST ATTACHED HERETO AND PART OF.
THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST LIEN(S) OF RECORD.
which has the address of 6555 SAUNDERS LAKE DRIVE S MINNETRISTA

[Street, City]

Minnesota   55364      (herein "Property Address");
          [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale hereby granted and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon the person, if any, in possession of the Property. Lender shall publish a notice of sale and the Property shall be sold at public auction in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all sums secured by this Mortgage; (b) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums constituting the default actually existing under this Mortgage and the Note at the commencement of foreclosure proceedings under this Mortgage; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, and at any time prior to the expiration of any period of redemption following sale of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_____ (Seal)
DODIE TAYLOR                                    - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

*(Sign Original Only)*

STATE OF MINNESOTA,  HENNEPIN                    County ss:

On this  15TH  day of  AUGUST, 2006    ,          , before me appeared
DODIE TAYLOR , A SINGLE WOMAN
                                                                , to me
personally known to be the person(s) described in and who executed the foregoing instrument and acknowledged that he/she/they executed the same as his/her/their free act and deed.

My Commission expires:

_____
Notary Public

This instrument was drafted by
of ROYAL CROWN BANCORP
   29400 KOHOUTEK WAY, STE. 150, UNION CITY, CA 94587
Tax statements for the real property described in this instrument should be sent to:
   ROYAL CROWN BANCORP
   29400 KOHOUTEK WAY, STE. 150, UNION CITY, CA 94587

Loan Number: 13012104600

# BALLOON RIDER

THIS BALLOON RIDER is made this 15th day of AUGUST 2006 , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to ROYAL CROWN BANCORP, A CALIFORNIA
CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.

MULTISTATE BALLOON RIDER
04/26/04                           Page 1 of 2                  DocMagic *eFarms* 800-649-1362
                                                                www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____           _____
Borrower DODIE  TAYLOR        Date        Borrower                      Date

_____           _____
Borrower                      Date        Borrower                      Date

_____           _____
Borrower                      Date        Borrower                      Date

Return To:
ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, STE. 150
UNION CITY, CALIFORNIA 94587

———————————————— [Space Above This Line For Recording Data] ————————————————

# PLANNED UNIT DEVELOPMENT RIDER

Prepared By:

DOC ID #: 13012104600

    THIS PLANNED UNIT DEVELOPMENT RIDER is made this 15th day of AUGUST   ,2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to  ROYAL CROWN BANCORP, A CALIFORNIA CORPORATION

**MULTISTATE PUD RIDER · Single Family/Second Mortgage**

FE-4256 (0207)          **VMP** *FORMSEDGE* · (800)635-4111        Initials: _____      **3/99**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as
SAUNDERS LAKE SOUTH
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Hazard Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

3/99

FE-4256 (0207)                    Page 2 of 3                    Initials: _____

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DODIE TAYLOR                                   - Borrower

_____ (Seal)
                                               - Borrower

_____ (Seal)
                                               - Borrower

_____ (Seal)
                                               - Borrower

3/99

Loan Number: 13012104600

Date: AUGUST 15, 2006

Property Address: 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 2211724410037

DocMagic *eForms* 800-649-1362
www.docmagic.com

# PREPAYMENT RIDER

Loan Number: 13012104600

Date: AUGUST 15, 2006

Borrower(s): DODIE TAYLOR

THIS PREPAYMENT RIDER (the "Rider") is made this 15th day of AUGUST , 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of ROYAL CROWN BANCORP, A CALIFORNIA CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. PREPAYMENT CHARGE

The Note provides for the payment of a prepayment charge as follows:

### 6 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within THIRTY-SIX ( 36 ) months after the date the Note is executed I make a full Prepayment (other than a full Prepayment in connection with the sale of the Property), I will pay a Prepayment charge equal to the lesser of (i) TWO percent ( 2.000 %) of the unpaid Principal balance at the time of Prepayment, or (ii) 60 days' interest on the unpaid Principal balance at the time of Prepayment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)      _____ (Seal)
DODIE TAYLOR     -Borrower                         -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                  -Borrower

MINNESOTA PREPAYMENT RIDER
6/03          Page 2 of 2          DocMagic *eForms* 800-649-1362
www.docmagic.com

ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, STE. 150
UNION CITY, CALIFORNIA 94587
(510)487-6925


DODIE TAYLOR                                      Loan Number: 13012104600
6555 SAUNDERS LAKE DRIVE S
MINNETRISTA, MINNESOTA 55364

RE: Transfer / Sale of Loan

Dear Borrower:

We thank you for the recent opportunity of assisting you in securing your real estate loan and look forward to serving your needs again in the future.

As a regular practice, most loans are sold in the secondary marketplace. This, however is no reflection on you nor your property and has no effect on your mortgage payments. Usually when a loan is sold, the servicing of your loan is also transferred. Because your loan has been sold along with its servicing, all future payments beginning with your OCTOBER 1, 2006                      payment are to be sent to:
COUNTRYWIDE HOME LOANS, INC., PAYMENT PROCESSING MSN PTX-36
P.O. BOX 10334
VAN NUYS, CALIFORNIA 91410-0334


Your monthly payment amount has not changed and consists of:

| | |
|---|---|
| PRINCIPAL AND INTEREST | $ 1,913.73 |
| MMI/PMI MONTHLY PREMIUM | |
| RESERVE FOR PROPERTY TAXES | |
| HAZARD INSURANCE RESERVE | |
| FLOOD INSURANCE RESERVE | |
| TOTAL MONTHLY PAYMENTS | $ 1,913.73 |

COUNTRYWIDE HOME LOANS, INC., PAYMENT PROCESSING MSN PTX-36           will forward payment information and/or coupons to you soon. In the event these coupons are delayed, please send your payment with the temporary payment coupon below directly to COUNTRYWIDE HOME LOANS, INC., PAYMENT PROCESSING MSN PTX-36

If a payment is in transit to us, we will forward your payment on to COUNTRYWIDE HOME LOANS, INC., PAYMENT PROCESSING MSN PTX-36
                                                                    immediately.

Should you have further questions, please call COUNTRYWIDE HOME LOANS, INC., PAYMENT PROCESSING MSN PTX-36
Loan Servicing Dept. at (800)669-6607     or the undersigned for assistance. We thank you for your cooperation.

Yours Truly,

ROYAL CROWN BANCORP
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
TEMPORARY PAYMENT COUPON

Loan Number 13012104600  Due Date NOVEMBER 1, 2006  Payment Amount $ 1,913.73

Name DODIE TAYLOR

Address 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364

Remit to: COUNTRYWIDE HOME LOANS, INC., PAYMENT PROCESSING MSN PTX-36
          P.O. BOX 10334
. . . . . . . . . . . . . VAN NUYS, CALIFORNIA 91410-0334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# PAYMENT LETTER TO BORROWER

FROM:      ROYAL CROWN BANCORP
·29400 KOHOUTEK WAY, STE. 150
·UNION CITY, CALIFORNIA 94587

RE:      Loan No: 13012104600
Property Address: 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364

TO:      ·DODIE TAYLOR
·6555 SAUNDERS LAKE DRIVE S
·MINNETRISTA, MINNESOTA 55364

Dear Borrower:

The monthly payments on the above referred to loan are to begin on    OCTOBER 1, 2006    , and will continue monthly until SEPTEMBER 1, 2021    .

Your monthly payment will consist of the following:

| | |
|---|---|
| **PRINCIPAL AND INTEREST** | $ 1,913.73 |
| **MMI/PMI INSURANCE** | |
| **RESERVE FOR TAXES** | |
| **RESERVE FOR INSURANCE** | |
| **RESERVE FOR FLOOD INSURANCE** | |
| | |
| **TOTAL MONTHLY PAYMENTS** | $ 1,913.73 |

You are to make your payments to:

.ROYAL CROWN BANCORP
.29400 KOHOUTEK WAY, STE. 150
.UNION CITY, CALIFORNIA 94587

Any correspondence, or calls, in reference to your loan, please refer to the above loan number.

Copy received and acknowledged.

Date: _____

DODIE TAYLOR _____

_____

_____

_____

_____

DocMagic *eForms* 800-649-1362
www.docmagic.com

FROM: ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, STE. 150
UNION CITY, CALIFORNIA 94587
Phone: (510)487-6925
Fax: (510)475-9133

TO: FIRST UNION TITLE & REAL ESTATE SVCS, LLC
6800 CITY WEST PKWY, STE. 350
EDEN PRAIRIE, MINNESOTA 55344

ATTN: MOLLIE

RE: Borrower(s): DODIE TAYLOR

Property Address: 6555 SAUNDERS LAKE DRIVE S
MINNETRISTA, MINNESOTA 55364

Document Date: AUGUST 15, 2006

Closing Date: AUGUST 15, 2006

Disbursement: AUGUST 15, 2006

Case No.:

Loan No.: 13012104600

App. No.:

Order No.:

Escrow No.:

# SPECIFIC CLOSING INSTRUCTIONS

## LOAN DOCUMENTS:

We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| (X) Note | (X) Transfer of Servicing | (X) 4506T |
| (X) Mortgage | (X) Settlement Statement Cert. | (X) Balloon Disclosure |
| (X) Planned Unit Dev. Rider | (X) Truth-in-Lending | (X) Insurance Requirements |
| (X) Balloon Payment Rider | (X) Itemization of amt fin. | (X) Worksheets |
| (X) Prepayment Rider to Sec/Int. | (X) Payment Letter | (X) Patriot Act |
| (X) Allonge to Note | (X) Borrowers Cert. | (X) Compliance Agreement |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement to each Borrower.

## LOAN TERMS:

Loan Amount: 173,000.00
Initial Advance:
Sales Price: 865,000.00
Term (Months): 180
Interest Rate: 13.000
Initial Payment: 1,913.73
First Payment Date: 10/01/06
Last Payment Date: 09/01/21

ARM Loan: ( ) Yes (X ) No
Index:
Margin:
Periodic Rate Cap:
Lifetime Rate Cap:
Lifetime Rate Floor:
Interest Change Date:
Payment Change Date:
Loan Purpose: PURCHASE MONEY J R

## PAYOFF REQUIREMENTS:

It is a condition to the funding of this loan that the following payoffs be made through this closing. Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff:

## CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:

1. ALL ROYAL CROWN DISCLOSURES TO BE SIGNED. 2. SUBJECT TO FLOOD DETERMINATION. 3. CLOSING INSTRUCTIONS SHALL INSTRUCT CLOSING AGENT TO NOTIFY THE LENDER IN WRITING PRIOR TO CLOSING A LOAN IF TITLE TO THE SUBJECT PROPERTY HAS CHANGED HANDS WITHIN THE PAST 180 DAYS, AND/OR THE NEW MORTGAGE REPRESENTS AN INCREASE OF OVER 25% OF A PREVIOUS MORTGAGE MADE DURING THAT SAME PERIOD; AND/OR IF THE AGENT HAS KNOWLEDGE OF PREVIOUS, CONCURRENT OR SUBSEQUENT TRANSACTIONS INVOLVING THE BORROWER OR THE SUBJECT WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION

## TITLE INSURANCE REQUIREMENTS:

You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN 2ND LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read: DODIE TAYLOR

3. Title Policy must contain the following endorsements (or their equivalents):

4. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable: TAXES TO BE PAID CURRENT AT CLOSING ; (iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated JUNE 27, 2006

## SECONDARY FINANCING:

Secondary financing in the amount of $ NONE has been approved.

## ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID BY |
|------|--------|-----|---------|
| UNDERWRITING FEE to: Lender | $350.00 ✓ | | Borrower |
| FUNDING FEE to: Lender | $350.00 ✓ | | Borrower |

Subtotal of Estimated Fees and Costs: $ ___700.00___

## PER DIEM INTEREST:

From: 08/15/06          To:09/01/06
(Anticipated Closing Date)

__17__ days at $ ____61.6164____ per day     Subtotal of Per Diem Interest:     $ ✓ 1,047.48

## IMPOUNDS/ESCROWS:

Impound/escrow checks should be made payable to and sent to us together with the original final HUD-1 Settlement Statement.

| | month(s) at $_____ | per month = $ |
| | month(s) at $_____ | per month = $ |
| | month(s) at $_____ | per month = $ |
| | month(s) at $_____ | per month = $ |
| | month(s) at $_____ | per month = $ |

Aggregate Escrow Adjustment:     $ _____

Impound Subtotal:     $ ___0.00___
Mortgage Ins. Premium:     $ _____
**TOTAL OF FEES AND COSTS:**     $ ___1,747.48___

## HUD-1 SETTLEMENT STATEMENT:

The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement to ROYAL CROWN BANCORP @ (510)475-9133
Attention: Quality Assurance. Send the original final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement: 29400 KOHOUTEK WAY, STE. 150, UNION CITY, CALIFORNIA 94587

**ADDITIONAL INFORMATION:** BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.

If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to: ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, STE. 150, UNION CITY, CALIFORNIA 94587

If you have any questions regarding any of these instructions, please contact ROYAL CROWN BANCORP
at(510)487-6925

**BORROWER ACKNOWLEDGMENT:** I/We have read and acknowledged receipt of these Closing Instructions.

| | | | |
|---|---|---|---|
| Borrower DODIE TAYLOR | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

**ACKNOWLEDGED AND AGREED:**

_Mollie J. Mure_   8/15/06
Settlement Agent                Date
MOLLIE

# CERTIFICATION ADDENDUM TO
# HUD-1 SETTLEMENT STATEMENT

Loan Number: 13012104600

Property Address: 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA
55364

I have carefully reviewed the HUD-1 settlement statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

| | | |
|---|---|---|
| DODIE TAYLOR _____ Borrower | | _____ Seller |
| _____ Borrower | | _____ Seller |
| _____ Borrower | | _____ Seller |
| _____ Borrower | | _____ Seller |
| _____ Borrower | | _____ Seller |
| _____ Borrower | | _____ Seller |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_____ 8/15/ae
Settlement Agent                Date
MOLLIE

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

## NOTE

### WITH BALLOON PAYMENT

AUGUST 15, 2006                             UNION CITY       , Minnesota
*Date*                                              *City*

6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364
*Property Address*

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 173,000.00     (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is ROYAL CROWN BANCORP, A CALIFORNIA CORPORATION

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of 13.000 %.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 1,913.73

I will make my payments on the 1st day of each month beginning on OCTOBER 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on SEPTEMBER 1, 2021 , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at 29400 KOHOUTEK WAY, STE. 150, UNION CITY, CALIFORNIA 94587

or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment, but not less than U.S. $ 6.76     and not more than U.S. $ N/A , I will pay this late charge only once on any late payment.

(B) Notice From Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 30 days after the date on which the notice is mailed to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated AUGUST 15, 2006 , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

---

**MINNESOTA - SECOND MORTGAGE**

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE   ** See attached Prepayment Note Addendum.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

**NOTICE TO BORROWER**
Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

_____ (Seal)
DODIE TAYLOR                -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

*(Sign Original Only)*

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 13012104600

Date: AUGUST 15, 2006

Borrower(s): DODIE TAYLOR

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 15th day of AUGUST, 2006 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of ROYAL CROWN BANCORP, A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 6 of the Note is amended to read in its entirety as follows:

## 6 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within THIRTY-SIX ( 36 ) months after the date the Note is executed I make a full Prepayment (other than a full Prepayment in connection with the sale of the Property), I will pay a Prepayment charge equal to the lesser of (i) TWO percent ( 2.000 %) of the unpaid Principal balance at the time of Prepayment, or (ii) 60 days' interest on the unpaid Principal balance at the time of Prepayment.

DocMagic *800-649-1362*
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____  _____    _____  _____
Borrower DODIE  TAYLOR        Date      Borrower                       Date


_____  _____    _____  _____
Borrower                      Date      Borrower                       Date


_____  _____    _____  _____
Borrower                      Date      Borrower                       Date

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 13012104600  Date: AUGUST 15, 2006
Creditor: ROYAL CROWN BANCORP
Address: 29400 KOHOUTEK WAY, STE. 150, UNION CITY, CALIFORNIA 94587

Borrower(s): DODIE TAYLOR

Address: 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA 55364

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 13.159 % | $324,469.95 | $171,252.52 | $495,722.47 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due | Number of Payments | Amount of Payment ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning | | | Monthly Beginning | | | Monthly Beginning |
| 179 | 1,913.73 | 10/01/06 | | | | | | |
| 1 | 153,164.80 | 09/01/21 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

_____ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
_____ Credit life insurance and credit disability  _X_ Property Insurance  _____ Flood Insurance  _____ Mortgage Insurance
You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MINNESOTA
_X_ The goods or property being purchased  _____ Real property you already own.  55364
FILING FEES:  $
LATE CHARGE: If payment is more than _____15_____ days late, you will be charged _____5.000_ % of the payment.
PREPAYMENT: If you pay off early, you
_X_ may  _____ will not  have to pay a penalty.
_____ may  _X_ will not  be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may  _____ may, subject to conditions  _X_ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
_X_ "e" means an estimate  _____ all dates and numerical disclosures except the late payment disclosures are estimates.
Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant DODIE TAYLOR | Date | Applicant | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

Lender: ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, STE. 150
UNION CITY, CALIFORNIA 94587

Re: DODIE TAYLOR
6555 SAUNDERS LAKE DRIVE S
MINNETRISTA, MINNESOTA 55364

Date: AUGUST 15, 2006
Loan Number: 13012104600

| Ref HUD-1 Statement | ITEMIZATION OF AMOUNT FINANCED | |
|---|---|---|
| | ■ Amount given to you directly | $ |
| | ■ Amount paid on your account | |
| 1001 | Insurance Reserves | |
| 1004 | Tax Reserves | |
| | Other Reserves | |
| 1009 | Aggregate Adjustment | |
| | ■ Amount paid to others on your behalf: | |
| 803 | Appraisal Fee | |
| 804 | Credit Reporting Fee | |
| 903 | Hazard Insurance Premium | |
| 809 | Document Preparation Fee | |
| 1106 | Notary Fee | |
| 1108 | Title Ins. Premium | |
| 1201 | Recording Fee | |
| | Loan Proceeds to: FIRST UNION TITLE & REAL ESTATE SVCS, LLC | $171,252.52 |
| | ■ AMOUNT FINANCED | $ 171,252.52 |
| | ■ Prepaid Finance Charge | $ 1,747.48 |

■ Loan Amount $ 173,000.00

| | ■ Itemization of Prepaid Finance Charge: | |
|---|---|---|
| 801 | Loan Origination Fee | $ |
| 802 | Loan Discount Fee | |
| 806 | Tax Service Fee | |
| | Prepaid Interest ( 17 days) | |
| 901 | @ 13.000 % per annum | 1,047.48 |
| 902 | Mtge. Ins. Premium | |
| 1002 | Mtge. Ins. Reserves | |
| 808 | Origination Fee | |
| | UNDERWRITING FEE to: Lender | 350.00 |
| | FUNDING FEE to: Lender | 350.00 |
| | Total Prepaid Finance Charge | $ 1,747.48 |

This form does not cover all items you will be required to pay in cash at settlement, for example, deposits in escrow for real estate taxes and insurance may be different. You may wish to inquire as to the amounts of such other items. You may be required to pay other additional amounts to be settled.

☐ All disclosures are estimates

The undersigned acknowledge receiving and reading a completed copy of this disclosure.

_____ (Borrower) DODIE TAYLOR (Date)

_____ (Borrower) (Date)

_____ (Borrower) (Date)

_____ (Borrower) (Date)

_____ (Borrower) (Date)

_____ (Borrower) (Date)

GOOD FAITH ESTIMATE OF SETTLEMENT CHARGES

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

(THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | | |
|---|---|---|---|
| Applicants: | DODIE TAYLOR | Prepared By: | ROYAL CROWN BANCORP<br>29400 KOHOUTEK WAY, #150 |
| Property Address: | 6555 SAUNDERS LAKE DRIVE S<br>MINNETRISTA, MN 55364 | | Union City , CA 94587<br>510-487-6925 |
| Application No: | TAYLOR2ND | Date Prepared: 08/01/2006 | |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 13.064 % | $ * 324,359.55 | $ * 171,362.92 | $ * 495,722.47 |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due | Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 179 | 1,913.73 | 10/01/2006 | | | | | | |
| 1 | 153,164.80 | 09/01/2021 | | | | | | |

☑ DEMAND FEATURE: This obligation has a demand feature.
☑ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance ☐ Credit disability ☑ Property insurance ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☑ If you purchase ☑ property ☐ flood insurance from creditor you will pay $ _____ for a one year term.
SECURITY: You are giving a security interest in: 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA MN 55364
☑ The goods or property being purchased ☐ Real property you already own.
FILING FEES: $ 80.00
LATE CHARGE: If a payment is more than 10 days late, you will be charged 6.000 % of the payment
PREPAYMENT: If you pay off early, you
☑ may ☐ will not have to pay a penalty.
☐ may ☑ will not be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
☐ may ☑ may, subject to conditions ☐ may not assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | | | | |
|---|---|---|---|---|---|
| DODIE TAYLOR | (Applicant) | (Date) | | (Applicant) | (Date) |
| | (Applicant) | (Date) | | (Applicant) | (Date) |
| | (Lender) | (Date) | | | |

Calyx Form - til.hp (02/85)

# ITEMIZATION OF AMOUNT FINANCED

Applicants: DODIE TAYLOR

Lender: ROYAL CROWN BANCORP
29400 KOHOUTEK WAY, #150
Union City, CA 94587
510-487-6925

Property Addr: 6555 SAUNDERS LAKE DRIVE S
MINNETRISTA, MN 55364

Application No: TAYLOR2ND

Date Prepared: 08/01/2006

| Total Loan Amount $ 173,000.00 | Prepaid Finance Charge $ 1,637.08 | Amount Financed $ 171,362.92 |
|---|---|---|

## ITEMIZATION OF PREPAID FINANCE CHARGE

| | | | |
|---|---|---|---|
| Underwriting Fee | | | 350.00 |
| FUNDING FEE | | | 350.00 |
| Interest for | 15 days @ $ | 62.4722 per day | 937.08 |
| | | | |
| Total Prepaid Finance Charge | | | 1,637.08 |

## AMOUNT PAID ON YOUR ACCOUNT / PAID TO OTHERS ON YOUR BEHALF

| | |
|---|---|
| Loan Origination Fee | |
| Loan Discount | |
| Appraisal Fee | |
| Credit Report | |
| Lender's Inspection Fee | |
| Mortgage Broker Fee | |
| Tax Related Service Fee | |
| Processing Fee | |
| Wire Transfer Fee | |

(POC)

| | |
|---|---|
| Mortgage Insurance Premium | |
| Hazard Insurance Premium | |
| VA Funding Fee | |
| Hazard Insurance Premium | 162.90 per month |
| Mortgage Ins. Premium Reserves | |
| School Tax | |
| Taxes and Assessment Reserves | 493.10 per month |
| Flood Insurance Reserves | |

| | |
|---|---|
| Closing or Escrow Fee: | |
| Document Preparation Fee | |
| Notary Fees | |
| Attorney Fees | |
| Title Insurance: | |

| | |
|---|---|
| Recording Fees: | |
| City/County Tax/Stamps: | |
| State Tax/Stamps | |

Pest Inspection

| | |
|---|---|
| Total Estimated Settlement Charge | 1,637.08 |

Applicant  DODIE TAYLOR                          Date          Applicant                                              Date

# GOOD FAITH ESTIMATE

| | | | |
|---|---|---|---|
| Applicants: | DODIE TAYLOR | Application No: | TAYLOR2ND |
| Property Addr: | 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MN 55364 | Date Prepared: | 08/01/2006 |
| Prepared By: | ROYAL CROWN BANCORP  Ph. 510-487-6925 | Loan Program: | |
| | 29400 KOHOUTEK WAY, #150, Union City, CA  94587 | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ **173,000**   Interest Rate: **13.000** %   Term: **360 / 180** mths

## 800   ITEMS PAYABLE IN CONNECTION WITH LOAN                                                    PFC S F POC

| | | | |
|---|---|---|---|
| 801 | Loan Origination Fee | $ | |
| 802 | Loan Discount | | |
| 803 | Appraisal Fee | | |
| 804 | Credit Report | | |
| 805 | Lender's Inspection Fee | | |
| 808 | Mortgage Broker Fee | | |
| 809 | Tax Related Service Fee | | |
| 810 | Processing Fee | | |
| 811 | Underwriting Fee | 350.00 | ✓ |
| 812 | Wire Transfer Fee | | |
| | FUNDING FEE | 350.00 | ✓ |
| | | | ✓ |

## 1100   TITLE CHARGES                                                                              PFC S F POC

| | | | |
|---|---|---|---|
| 1101 | Closing or Escrow Fee: | $ | |
| 1105 | Document Preparation Fee | | |
| 1106 | Notary Fees | | |
| 1107 | Attorney Fees | | |
| 1108 | Title Insurance: | | |

## 1200   GOVERNMENT RECORDING & TRANSFER CHARGES                                                 PFC S F POC

| | | | |
|---|---|---|---|
| 1201 | Recording Fees: | $ | |
| 1202 | City/County Tax/Stamps: | | |
| 1203 | State Tax/Stamps: | | |

## 1300   ADDITIONAL SETTLEMENT CHARGES                                                           PFC S F POC

| | | | |
|---|---|---|---|
| 1302 | Pest Inspection | $ | |

| | | | |
|---|---|---|---|
| | **Estimated Closing Costs** | 700.00 | |

## 900   ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE                                          PFC S F POC

| | | | | | | |
|---|---|---|---|---|---|---|
| 901 | Interest for | 15 | days @ $ | 62.4722 | per day | $ 937.08 ✓ |
| 902 | Mortgage Insurance Premium | | | | | |
| 903 | Hazard Insurance Premium | | | | | |
| 904 | | | | | | |
| 905 | VA Funding Fee | | | | | |

## 1000   RESERVES DEPOSITED WITH LENDER                                                          PFC S F POC

| | | | | |
|---|---|---|---|---|
| 1001 | Hazard Insurance Premiums | months @ $ | 162.90 per month | $ |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | per month | |
| 1003 | School Tax | months @ $ | per month | |
| 1004 | Taxes and Assessment Reserves | months @ $ | 493.10 per month | |
| 1005 | Flood Insurance Reserves | months @ $ | per month | |
| | | months @ $ | per month | |
| | | months @ $ | per month | |

| | | |
|---|---|---|
| | **Estimated Prepaid Items/Reserves** | 937.08 |
| **TOTAL ESTIMATED SETTLEMENT CHARGES** | | 1,637.08 |

## TOTAL ESTIMATED FUNDS NEEDED TO CLOSE                 TOTAL ESTIMATED MONTHLY PAYMENT

| | | | | | |
|---|---|---|---|---|---|
| Purchase Price/Payoff (+) | 865,000.00 | New First Mortgage(-) | 692,000.00 | Principal & Interest | 5,117.92 |
| Loan Amount (-) | 173,000.00 | Sub Financing(-) | | Other Financing (P & I) | 1,913.73 |
| Est. Closing Costs (+) | 700.00 | New 1st Mtg Closing Costs(+) | 26,419.12 | Hazard Insurance | 162.90 |
| Est. Prepaid Items/Reserves (+) | 937.08 | | | Real Estate Taxes | 493.10 |
| Amount Paid by Seller (-) | | | | Mortgage Insurance | |
| | | | | Homeowner Assn. Dues | 125.00 |
| | | | | Other | |
| Total Est. Funds needed to close | | | 28,056.20 | Total Monthly Payment | 7,812.65 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.   The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

| | | | | |
|---|---|---|---|---|
| Applicant  **DODIE TAYLOR** | | Date | Applicant | Date |

Calyx Form gfe2.frm 11/01

# GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Applicants:    DODIE TAYLOR

Prepared By:    **ROYAL CROWN BANCORP**
               **29400 KOHOUTEK WAY, #150**

Property Address:    6555 SAUNDERS LAKE DRIVE S
                     MINNETRISTA, MN 55364
               **Union City , CA 94587**
               **510-487-6925**

Application No:    TAYLOR2ND

Date Prepared: 08/01/2006

Lender requires use of the following provider(s) of settlement services **(if none are listed, Lender does not require the use of specified providers):**

| | |
|---|---|
| Provider **FIRST AMERICAN CREDCO** | Provider **STONERIDGE APPRAISAL SERVICES** |
| Address **12395 FIRST AMERICAN WAY** | Address **4511 ALLENDALE DRIVE** |
| **POWAY, CA 92064-0495** | **WHITE BEAR TOWNSHIP, MN 55127** |
| Phone **800-637-2422** | Phone |

Services to be rendered by this provider are items number

           **CREDIT REPORT**

above and the amounts listed are based upon the charges of this provider. If checked, Lender has the following type of business relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment, franchise or other business relationship with Lender.

[ ] Within the last 12 months, the provider has maintained an account with Lender or had an outstanding loan or credit arrangement with Lender.

[√] Within the last 12 months, Lender has repeatedly used or required borrowers to use the services of this provider.

Services to be rendered by this provider are items number

           **APPRAISAL**

above and the amounts listed are based upon the charges of this provider. If checked, Lender has the following type of business relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment, franchise or other business relationship with Lender.

[ ] Within the last 12 months, the provider has maintained an account with Lender or had an outstanding loan or credit arrangement with Lender.

[ ] Within the last 12 months, Lender has repeatedly used or required borrowers to use the services of this provider.

| | | | |
|---|---|---|---|
| Applicant **DODIE TAYLOR** | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

# GOOD FAITH ESTIMATE PROVIDER RELATIONSHIP

Applicants: **DODIE TAYLOR**

Property Address: **6555 SAUNDERS LAKE DRIVE S**
**MINNETRISTA, MN 55364**

Application No: **TAYLOR2ND**

Prepared By: **ROYAL CROWN BANCORP**
**29400 KOHOUTEK WAY, #150**
**Union City, CA 94587**
**510-487-6925**

Date Prepared: **08/01/2006**

Lender requires use of the following provider(s) of settlement services **(If none are listed, Lender does not require the use of specified providers):**

Provider **LANDSAFE APPRAISAL**
Address **P.O. BOX 650530**
        **DALLAS, TX 75265-0530**
Phone

Provider **RAPID APPRAISALS, INC.**
Address **9025 ARCHER COURT**
        **MAPLE GROVE, MN 55311**
Phone **763-416-0913**

Services to be rendered by this provider are items number

**APPRAISAL REVIEW**

above and the amounts listed are based upon the charges of this provider. If checked, Lender has the following type of business relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment, franchise or other business relationship with Lender.

[ ] Within the last 12 months, the provider has maintained an account with Lender or had an outstanding loan or credit arrangement with Lender.

[ ] Within the last 12 months, Lender has repeatedly used or required borrowers to use the services of this provider.

Services to be rendered by this provider are items number

**APPRAISALS**

above and the amounts listed are based upon the charges of this provider. If checked, Lender has the following type of business relationship with this provider:

[ ] The provider is an associate of Lender.

[ ] The provider is an affiliate of Lender.

[ ] The provider is a relative of Lender.

[ ] The provider has an employment, franchise or other business relationship with Lender.

[ ] Within the last 12 months, the provider has maintained an account with Lender or had an outstanding loan or credit arrangement with Lender.

[ ] Within the last 12 months, Lender has repeatedly used or required borrowers to use the services of this provider.

Applicant **DODIE TAYLOR**                     Date

Applicant                                       Date

Applicant                                       Date

Applicant                                       Date

# Borrowers' Certification and Authorization

## CERTIFICATION

The Undersigned certify the following:

1. I/We have applied for a mortgage loan through **ROYAL CROWN BANCORP**               . In applying for the loan, I/We completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and the assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/We omit any pertinent information.

2. I/We understand and agree that **ROYAL CROWN BANCORP**                reserves the right to change the mortgage loan review processes to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

## AUTHORIZATION TO RELEASE INFORMATION

To Whom It May Concern:

1. I/We have applied for a mortgage loan through **ROYAL CROWN BANCORP**              . As part of the application process, **ROYAL CROWN BANCORP**               and the mortgage guaranty insurer (if any), may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to **ROYAL CROWN BANCORP**              and to any investor to whom **ROYAL CROWN BANCORP**               may sell my mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market and similar account balances; credit history; and copies of income tax returns.

3. **ROYAL CROWN BANCORP**               or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

Borrower Signature _____
         **DODIE TAYLOR**

SSN: **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**          Date: _____

Co-Borrower Signature _____

SSN: _____          Date: _____

# EQUAL CREDIT OPPORTUNITY ACT

APPLICATION NO:   TAYLOR2ND

**Date: 08/01/2006**

PROPERTY ADDRESS:  **6555 SAUNDERS LAKE DRIVE S**
**MINNETRISTA, MN 55364**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this company is the Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3710, Houston, Texas 77010

We are required to disclose to you that you need not disclose income from alimony, child support or separate maintenance payment if you choose not to do so.

Having made this disclosure to you, we are permitted to inquire if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan for which you are applying.

| | | |
|---|---|---|
| **DODIE TAYLOR**       (Applicant)    (Date) | | (Applicant)    (Date) |
| (Applicant)    (Date) | | (Applicant)    (Date) |

# THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977
## FAIR LENDING NOTICE

DATE:  08/01/2006

APPLICATION NO:  TAYLOR2ND

COMPANY:  **ROYAL CROWN BANCORP**
**29400 KOHOUTEK WAY, #150**
**Union City, CA 94587**

PROPERTY ADDRESS:  **6555 SAUNDERS LAKE DRIVE S**
**MINNETRISTA, MN 55364**

It is illegal to discriminate in the provisions of or in the availability of financial assistance because of the consideration of:

1. Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe and unsound business practice; or

2. Race, color, religion, sex, marital status, national origin or ancestry.

It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of a one-to-four unit family residence occupied by the owner and for the purpose of the home improvement of any one-to-four unit family residence.

If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution or the agency noted below :

I/we received a copy of this notice.

_____         _____
**DODIE TAYLOR**                    Date                                    Date

# NOTICE TO THE HOME LOAN APPLICANT
## CREDIT SCORE INFORMATION DISCLOSURE

| APPLICANT(S) NAME AND ADDRESS | LENDER NAME AND ADDRESS (ORIGINATOR): |
|---|---|
| DODIE TAYLOR<br>11913 70TH PLACE N<br>Osseo MN, 55369 | ROYAL CROWN BANCORP<br>29400 KOHOUTEK WAY, #150<br>Union City, CA 94587<br>(P) 510-487-6925, (F) 510-475-9133 |

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer-generated summary calculated at the time of the request and based on information a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit-scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

The consumer reporting agencies listed below provided a credit score that was used in connection with your home loan application.

| Consumer Reporting Agency #1 | Borrower | Factors: |
|---|---|---|
| EXPERIAN<br><br>P.O BOX 2002<br>Allen, TX 75013<br>(P)888-397-3742 | DODIE TAYLOR<br><br>Score: +766<br>Created: 08/01/2006 | 10 PROPORTION OF BALANCE TO HIGH CREDIT ON BANK REVOLVING OR ALL REVOLVING ACCOUNTS<br>05 TOO MANY ACCOUNTS WITH BALANCES<br>08 TOO MANY INQUIRIES LAST 12 MONTHS<br>18 NUMBER OF ACCOUNTS WITH DELINQUENCY |
| Model Used:<br>ExperianFairIsaac | Co-Borrower<br><br>Score:<br>Created: | Factors: |
| Range of Possible Scores<br>300 to 850 | | |
| Consumer Reporting Agency #2 | Borrower | Factors: |
| TRANS UNION<br><br>P.O BOX 34012<br>Fullerton, CA 92834<br>(P)800-916-8800 | DODIE TAYLOR<br><br>Score: +727<br>Created: 08/01/2006 | 018 NUMBER OF ACCOUNTS WITH DELINQUENCY<br>010 PROPORTION OF BALANCES TO CREDIT LIMITS IS TOO HIGH ON BANK REVOLVING OR OTHER REVOLVING ACCOUNTS<br>008 TOO MANY INQUIRIES LAST 12 MONTHS<br>012 LENGTH OF TIME REVOLVING ACCOUNTS HAVE BEEN ESTABLISHED |
| Model Used:<br>TransUnionEmpirica | Co-Borrower<br><br>Score:<br>Created: | Factors: |
| Range of Possible Scores<br>336 to 843 | | |
| Consumer Reporting Agency #3 | Borrower | Factors: |
| EQUIFAX<br><br>P.O. BOX 740256<br>Atlanta, GA 30374-0256<br>(P)800-685-1111 | DODIE TAYLOR<br><br>Score: +772<br>Created: 08/01/2006 | 00030 TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT<br>00018 NUMBER OF ACCOUNTS WITH DELINQUENCY<br>00005 TOO MANY ACCOUNTS WITH BALANCES<br>00010 PROPORTION OF BALANCES TO CREDIT LIMITS IS TOO HIGH ON BANK REVOLVING. OR OTHER REVOLVING ACCOUNTS |
| Model Used:<br>EquifaxBeacon | Co-Borrower<br><br>Score:<br>Created: | Factors: |
| Range of Possible Scores<br>363 to 850 | | |

I/We have received a copy of this disclosure.

_____  _____  _____  _____
Applicant                Date           Applicant                Date

# PATRIOT ACT
# INFORMATION DISCLOSURE

| | |
|---|---|
| Applicant Name | DODIE TAYLOR |
| Co-Applicant Name | |
| Present Address | 11913 70TH PLACE N, Osseo, MN 55369 |
| Mailing Address | 11913 70TH PLACE N, Osseo, MN 55369 |

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

I/we acknowledge that I/we received a copy of this disclosure.

Applicant _____   Date _____

Applicant _____   Date _____

# Customer Identification Documentation
## Patriot Act

The USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies every customer. Completion of this documentation is required in order to comply with the USA Patriot Act. A completed copy of this information must be retained with the loan file.

Application Number ___TAYLOR2ND___        Date _____

Name of Applicant ___DODIE TAYLOR___ _____

Social Security # ___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___        Date of Birth ___07/07/1964___

Present Address ___11913 70TH PLACE N / Osseo, MN 55369___

Mailing Address ___11913 70TH PLACE N / Osseo, MN 55369___


Primary Identification Documentation

Document Type _____        Other Document Type _____

Document Number _____

Issue Date _____        Expiration Date _____

Issued by _____


Secondary Identification Documentation

Document Type _____        Other Document Type _____

Document Number _____

Issue Date _____        Expiration Date _____

Issued by _____


Discrepancies and Resolution




Completed by _____

Calyx Form (4/04)
BRWIDDoc.frm

# Customer Identification Documentation
# Patriot Act

The USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies every customer. Completion of this documentation is required in order to comply with the USA Patriot Act. A completed copy of this information must be retained with the loan file.

Application Number __TAYLOR2ND_____ Date _____

Name of Applicant _____

Social Security # _____ Date of Birth _____

Present Address _____

Mailing Address _____


Primary Identification Documentation

Document Type _____ Other Document Type _____

Document Number _____

Issue Date _____ Expiration Date _____

Issued by _____


Secondary Identification Documentation

Document Type _____ Other Document Type _____

Document Number _____

Issue Date _____ Expiration Date _____

Issued by _____


Discrepancies and Resolution




Completed by _____

# Organization, or Entity
# Identification Documentation
# Patriot Act

The USA Patriot Act requires all financial institutions to obtain, verify and record information that identifies every customer. Completion of this documentation is required in order to comply with the USA Patriot Act. A completed copy of this information must be retained with the loan file.

Application Number __TAYLOR2ND__ Date _____

Organization or Entity's Name _____

Borrower's Name ____DODIE TAYLOR____

Doing Business As _____

Type of Organization or Entity _____

Organization or Entity's Physical Address _____

Organization or Entity's Mailing Address _____

Organization or Entity Identification Documentation

Document Type _____ Other Document Type _____

Document Number _____ Tax Identification Number _____

Issue Date _____ Expiration Date _____

Issued by _____

Discrepancies and Resolution

Completed by _____

Calyx Form (4/04)
OrgIDDoc.frm

# PRIVACY POLICY DISCLOSURE
### (Protection of the Privacy of Personal Non-Public Information)

Respecting and protecting customer privacy is vital to our business. By explaining our Privacy Policy to you, we trust that you will better understand how we keep our customer information private and secure while using it to serve you better. Keeping customer information secure is a top priority, and we are disclosing our policies to help you understand how we handle the personal information about you that we collect and disclose. This notice explains how you can limit our disclosing of personal information about you. The provisions of this notice will apply to former customers as well as current customers unless we state otherwise.

## The Privacy Policy explains the Following:

- Protecting the confidentiality of our customer information.
- Who is covered by the Privacy Policy.
- How we gather information.
- The types of information we share, why, and with whom.
- Opting Out - how to instruct us not to share certain information about you or not to contact you.

## Protecting the Confidentiality of Customer Information:

We take our responsibility to protect the privacy and confidentiality of customer information very seriously. We maintain physical, electronic, and procedural safeguards that comply with federal standards to store and secure information about you from unauthorized access, alteration, and destruction. Our control policies, for example, authorize access to customer information only by individuals who need access to do their work.

From time to time, we enter into agreements with other companies to provide services to us or make products and services available to you. Under these agreements, the companies may receive information about you but they must safeguard this information, and they may not use it for any other purposes.

## Who is Covered by the Privacy Policy:

We provide our Privacy Policy to customers when they conduct business with our company. If we change our privacy policies to permit us to share additional information we have about you, as described below, or to permit disclosures to additional types of parties, you will be notified in advance. This Privacy Policy applies to consumers who are current customers or former customers.

## How We Gather Information:

As part of providing you with financial products or services, we may obtain information about you from the following sources:

- Applications, forms, and other information that you provide to us, whether in writing, in person, by telephone, electronically, or by any other means. This information may include your name, address, employment information, income, and credit references;

- Your transaction with us, our affiliates, or others. This information may include your account balances, payment history, and account usage;

- Consumer reporting agencies. This information may include account information and information about your credit worthiness;

- Public sources. This information may include real estate records, employment records, telephone numbers, etc.

## Information We Share:

We may disclose information we have about you as permitted by law. We are required to or we may provide information about you to third-parties without your consent, as permitted by law, such as:

- To regulatory authorities and law enforcement officials.

- To protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability.

- To report account activity to credit bureaus.

- To consumer reporting agencies.

- To respond to a subpoena or court order, judicial process or regulatory authorities.
- In connection with a proposed or actual sale, merger, or transfer of all or a portion of a business or an operating unit, etc.

In addition, we may provide information about you to our service providers to help us process your applications or service your accounts. Our service providers may include billing service providers, mail and telephone service companies, lenders, investors, title and escrow companies, appraisal companies, etc.

We may also provide information about you to our service providers to help us perform marketing services. This information provided to these service providers may include the categories of information described above under "How We Gather Information" limited to only that which we deem appropriate for these service providers to carry out their functions.

We do not provide non-public information about you to any company whose products and services are being marketed unless you authorize us to do so. These companies are not allowed to use this information for purposes beyond your specific authorization.

## Opting Out

We also may share information about you within our corporate family of office(s). We may share all of the categories of information we gather about you, including identification information (such as your name and address), credit reports (such as your credit history), application information (such as your income or credit references), your account transactions and experiences with us (such as your payment history), and information from other third parties (such as your employment history).

By sharing this information we can better understand your financial needs. We can then send you notification of new products and special promotional offers that you may not otherwise know about. For example, if you originally obtained a mortgage loan with us, we would know that you are a homeowner and may be interested in hearing how a home equity loan may be a better option than an auto loan to finance the purchase of a new car.

You may prohibit the sharing of application and third-party credit-related information within our company or any third-party company at any time. If you would like to limit disclosures of personal information about you as described in this notice, just check the appropriate box or boxes to indicate your privacy choices.

- ☐ Please do not share personal information about me with non-affiliated third-parties.

- ☐ Please do not share personal information about me with any of your affiliates except as necessary to effect, administer, process, service or enforce a transaction requested or authorized by myself.

- ☐ Please do not contact me with offers of products or services by mail.

- ☐ Please do not contact me with offers of products or services by telephone.

*Note for Joint Accounts: Your Opt Out choices will also apply to other individuals who are joint account holders. If these individuals have separate accounts, your Opt Out will not apply to those separate accounts.*

| **DODIE TAYLOR** | **ROYAL CROWN BANCORP** |
|---|---|
| Name | Company Name |
| **11913 70TH PLACE N** | **29400 KOHOUTEK WAY, #150** |
| Address | Address |
| **Osseo, MN 55369** | **Union City CA, 94587** |
| City, State, Zip | City, State, Zip |
| **763-315-1066** | **510-487-6925** |
| Phone# | Phone # |
| **TAYLOR2ND** | |
| Loan # | |

| | | | |
|---|---|---|---|
| Borrower's Signature | Date | Co-Borrower's Signature | Date |

# NOTICE TO APPLICANT OF RIGHT
# TO RECEIVE COPY OF APPRAISAL REPORT

APPLICATION NO:    **TAYLOR2ND**                                    **Date: 08/01/2006**

PROPERTY ADDRESS:    6555 SAUNDERS LAKE DRIVE S
                     MINNETRISTA, MN 55364 County:Hennepin

You have the right to receive a copy of the appraisal report to be obtained in connection with the loan for which you are applying, provided that you have paid for the appraisal. We must receive your written request no later than    90 days after we notify you about the action taken on your application or you withdraw your application. If you would like a copy of the appraisal report, contact :

        **ROYAL CROWN BANCORP**
        **29400 KOHOUTEK WAY, #150**
        **Union City, CA 94587**

| **DODIE TAYLOR** | (Applicant) (Date) | | (Applicant) (Date) |
|---|---|---|---|
| | (Applicant) (Date) | | (Applicant) (Date) |

# SERVICING DISCLOSURE STATEMENT

Lender:  **ROYAL CROWN BANCORP**
**29400 KOHOUTEK WAY, #150**
**Union City , CA 94587**

Date: **08/01/2006**

NOTICE TO SECOND LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer practices and requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60 day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your servicer, then your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

   A. ☐ We may assign, sell or transfer the servicing of your loan while the loan is outstanding.

      We are able to service your loan, and we
      ☐ will service your loan.
      ☐ will not service your loan.
      ☐ haven't decided whether to service your loan.

   B. ☐ We do not service mortgage loans ☐ and we have not serviced mortgage loans in the past three years.
      We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

2. For all mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

   _____ 0 to 25%        _____ 26 to 50%        _____ 51 to 75%        _____ 76 to 100%

   This estimate ☐ does ☐ does not   include assignments, sales or transfers to affiliates or subsidiaries.

   This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. A. ☐ We have previously assigned, sold, or transferred the servicing of mortgage loans.

   B. ☐ This is our record of transferring the servicing of mortgage loans we have made in:

   | Year | Percentage of Loans Transferred |
   | --- | --- |
   | | % |
   | | % |
   | | % |

   This information ☐ does ☐ does not   include assignments, sales or transfers to affiliates or subsidiaries.

**Acknowledgment of Mortgage Loan Applicant(s)**

I/We have read and understood the disclosure; and understand that the disclosure is a required part of the mortgage application as evidenced by my/our signature(s) below;

| Applicant | DODIE TAYLOR | Date | Applicant | Date |
| --- | --- | --- | --- | --- |

| Applicant | Date | Applicant | Date |
| --- | --- | --- | --- |

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____   Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☑ Conventional ☐ Other (explain): <br> ☐ FHA ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | |
|---|---|---|---|---|
| $ 173,000 | 13.000 % | 360/180 | ☐ Fixed Rate ☐ Other (explain): <br> ☐ GPM ☑ ARM (type): 3/27 IO | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 6555 SAUNDERS LAKE DRIVE S, MINNETRISTA, MN 55364   County: Hennepin | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE PRELIM | 2000 |

| Purpose of Loan | ☑ Purchase ☐ Construction ☐ Other (explain): <br> ☐ Refinance ☐ Construction-Permanent | Property will be: <br> ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made ☐ to be made |
|---|---|---|---|---|---|
| | $ | $ | | Cost: $ | |

| Title will be held in what Name(s) <br> DODIE TAYLOR | Manner in which Title will be held <br> Single woman | Estate will be held in: <br> ☑ Fee Simple <br> ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
**Checking/Savings**

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) <br> **DODIE TAYLOR** | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | 763-315-1066 | 07/07/1964 | 14 | | | | |

| ☐ Married ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 0   ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 8 No. Yrs. <br> 11913 70TH PLACE N <br> Osseo, MN 55369 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Name & Address of Employer<br>**WOODDALE BUILDERS**<br>5435 FELTL RD<br>Saint Paul, MN 55111 | ☐ Self Employed | Yrs. on this job<br>**9 yr(s)**<br>Yrs. employed in this line of work/profession<br>**3** | Name & Address of Employer | ☐ Self Employed | Yrs. on this job<br><br>Yrs. employed in this line of work/profession |
| Position/Title/Type of Business<br>**CONTROLLER** | | Business Phone (incl. area code)<br>**952-345-6802** | Position/Title/Type of Business | | Business Phone (incl. area code) |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer<br>**WYZATA PROPERTIES**<br>294 GROVE LANE E<br>Wayzata, MN 55391 | ☐ Self Employed | Dates (from-to)<br>05/22/2001 -<br>01/05/2006<br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business<br>**CONTROLLER / PROP MGR** | | Business Phone (incl. area code)<br>**952-404-4000** | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 18,000.00 | $ | $ 18,000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 671.00 | $ 5,117.92 |
| Bonuses | | | | Other Financing (P&I) | | 1,913.73 |
| Commissions | | | | Hazard Insurance | 300.00 | 162.90 |
| Dividends/Interest | | | | Real Estate Taxes | 140.91 | 493.10 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | 125.00 |
| | | | | Other: | | |
| Total | $ 18,000.00 | $ | $ 18,000.00 | Total | $ 1,111.91 | $ 7,812.65 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | Name and address of Company **CITIMORTGAGE INC** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union **US BANK** | | | | |
| | | Acct. no. 2002212305 | (671) | 120,981 |
| Acct. no. 2210477704060802134 | $ | Name and address of Company **US DEPT OF EDUCATION** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 4777249511 | 90 | 6,697 |
| Acct. no. | $ | Name and address of Company **CHASE** | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 4305875590050117 | 77 | 3,863 |
| Acct. no. | $ | Name and address of Company **WFFNATLBNK** | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | |
| | | Acct. no. 866000 | 69 | 1,387 |
| | | Name and address of Company **MBNA AMERICA** | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ | Acct. no. 9048 | 15 | 267 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 190,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ 30,795 | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ 251 | |
| **Total Assets a.** | $ 220,795 | Net Worth (a minus b) ⟹ $ 87,600 | **Total Liabilities b.** | $ 133,195 |

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 11913 70TH PLACE N MAPLE GROVE MN 55369 | R | SFR | CITI $ 190,000 | $ 120,981 | $ 1,200 | $ 671 | $ 441 | $ -32 |
| | | | | | | | | |
| | | | | | | | | |
| | | Totals | $ 190,000 | $ 120,981 | $ 1,200 | $ 671 | $ 441 | $ -32 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp3.frm 09/05

Page 3 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65   07/05